## PARSHALL, STATE ENGINEER, ET AL., v. COWPER, ET AL.

### (No. 754.)

WATER AND WATER RIGHTS—IRRIGATION—PRIORITIES—ADJUDICATION BY BOARD OF CONTROL—CONCLUSIVE EFFECT—DISTRIBUTION TO APPROPRIATORS—AUTHORITY OF OFFICERS—AUTHORITY TO DETERMINE FORFEITURE OR ABANDONMENT—AUTHORITY TO PREVENT WASTE.

1. An adjudication by the Board of Control of the right and priority of an appropriator to the use of water cannot be changed, modified, or annulled by the State Engineer or his subordinates in distributing the water of a stream, nor are they authorized to prevent such appropriator from using the amount of water allowed him by the adjudication, except to prevent waste.

2. The duty of the officers authorized and required to distribute water of a stream is to divide the water according to the rights of the appropriators, as adjudicated.

3. The adjudication by the Board of Control as to the quantity of water to which an appropriator is entitled is as conclusive upon the water distributers as its determination of

priorities, with the exception that the headgate may be regulated so as to prevent waste.

4. For the purpose of governing the division and distribution of water between appropriators, the adjudication of rights and priorities by the Board of Control is as conclusive as though an appeal had been taken from its decision and a decree entered by the court, and until set aside or modified in a proper proceeding in which the interested parties are given an opportunity to be heard, is final, so far as the water officials are concerned, except that they are authorized to prevent waste.

5. The officers charged with the duty of dividing and distributing the water of a stream between appropriators whose rights and priorities have been adjudicated, are not empowered, in exercising that duty, to determine questions of forfeiture or abandonment.

6. The volume of water to which an appropriator is entitled at any particular time is that quantity, within the limits of the appropriation, which he can and does apply to the beneficial uses stated in his certificate of appropriation, which may be more at one time than at another.

7. Under the statute (Comp. Stat. 1910, Sec. 802) authorizing the water commissioner to divide, regulate, and control the use of the water of all streams within his district by such closing or partial closing of headgates as will prevent the waste of water, or its use, in excess of the volume to which an appropriator is lawfully entitled, the commissioner, in the performance of his duties, and while exercising a sound discretion and reasonable care, is not subject to control by the courts; in performing such duties, the commissioner's acts are temporary, and the quantity of water permitted to flow into an appropriator's ditch may and should be changed from time to time, as the needs of the appropriator require.

8. In the performance of his duties, the water commissioner has no authority to determine whether or not a water right has been forfeited or abandoned, or to prevent an appropriator from taking the full quantity of water awarded him by the Board of Control, when he is prepared to and desires to use it for the purposes stated in his certificate of appropriation.

9. In an action to enjoin the State Engineer and other water officials in so closing the headgate of an appropriator's ditch as to deprive him of a part of the water awarded by the Board of Control, the defendants should be allowed to

plead and prove that plaintiff was permitted to use all the water that was being applied or that the appropriator was in a position to and desired to apply to beneficial uses under his certificate of appropriation.

10. In such action, an allegation in the answer that the quantity of water directed by the State Engineer to be allowed to run down to the headgate of plaintiff's ditch was the largest quantity that could be run through said ditch and applied to the irrigation of lands described in the permit and adjudication by the Board of Control for use through said ditch, when fairly and liberally construed, presents the defense that all the water was allowed to reach the headgate of the plaintiff's ditch that in its then condition could be conducted through it and applied to the purposes described in the permit and adjudication.

[Decided September 28, 1914].                    (143 Pac. 302).

Error to the District Court, Albany County; Hon. V. J. Tidball, Judge.

The action was brought by Robert J. Cowper, Augusta Cowper, and the City of Laramie against A. J. Parshall, as State Engineer; Frank S. Knittle, as Superintendent of Water Division No. One, and Carson Adams, as Water Commissioner, to enjoin the closing of the headgate of an irrigating ditch. Judgment was entered for the plaintiffs granting the injunction prayed for, and the State Engineer and Division Superintendent brought error. The other material facts are stated in the opinion.

*D. A. Preston,* Attorney General, and *M. C. Brown,* for plaintiffs in error.

The petition alleged that the ditch in question had been sold by the Cowpers to the City of Laramie, and that there was an agreement between them whereby the ditch and water rights might be used for the purpose of irrigating the Cowper land. If the city became the owner of the water, it was necessary that the petition show that the ditch and water right had been purchased by the city for such purposes as are allowed by law and with the intention of bringing the water within the limits of the city for use of its citi-

zens. The petition containing no such allegation, the city could not, upon the pleadings, lawfully acquire any right to the water by the transaction. Hence, so far as the city is concerned, the petition is fatally defective. Among other things necessary to be done before the city could lawfully make the purchase was to submit the question to a vote of the people. The city has no authority to purchase water and water rights to irrigate lands of other persons in no way connected with the city, but lying outside the city limits and not used for city purposes. The city, therefore, could not make any lawful contract with the Cowpers for the use of *all* the water claimed to have been purchased from them by the city. And, therefore, the Cowpers are without any interest in the matters complained of, and the city was making no legitimate use of the water, so that the rule of *damnum absque injuria* applies. Where there is no injury injunction will not be allowed. It was shown by the affidavits filed in opposition to the allowance of a temporary injunction that for many years not more than twenty acres described in the certificate of appropriation for the Home Ditch had been irrigated, and that for more than ten years there had not been to exceed one-half foot of water per second run down to the intake of said ditch, and only .38 of a cubic foot actually applied to the irrigation of the land described in the certificate of appropriation. The balance of the water was permitted to flow down the creek to be wasted. Thus the question presented for consideration was, could the engineer and superintendent prevent the waste of water by giving the order that only .38 of a cubic foot be permitted to run down to the headgate of the ditch. That the city was without right to buy and use all the water claimed in irrigating the Cowper land, see: Dillon on Munic. Corp. (2nd Ed.), Sec. 55; Petersburg v. Metzger, 21 Ill. 205; Muteon v. Larne, 23 How. 435; Thompson v. Lee Co., 3 Wall. 320; Thomas v. Richmond, 12 Wall. 349; Clark v. Davenport, 14 Ia. 495; Leonard v. Canton, 35 Miss. 189; 20 Ency. Law (2nd Ed.) 1140.

Where water is not being applied to a beneficial use by the first appropriator, and the appropriator next in point of time and use loses the use of the water, then the water is being wasted, which the water officials are authorized by law to prevent. (Comp. Stat. 1910, Secs. 802, 724, 777). The quantity of water to which an appropriator is entitled at any particular time is necessarily controlled by the capacity of his ditch. (McDonald v. Lannen, 47 Pac. 649; Comp. Stat. 1910, Secs. 741, 755, 778; Farm Inv. Co. v. Carpenter, 9 Wyo. 122; Johnston v. Irr. Co., 13 Wyo. 208).

It is clear that the city had not reduced the water to possession, nor brought it in any manner to the city for use, and, therefore, so far as its alleged rights are concerned, the water was being wasted. (Sherred v. Baker City, (Ore.) 125 Pac. 826). And the water officials were authorized to prevent that waste. The action cannot be maintained without joining as defendants the real parties in interest, viz: the appropriators from the stream. (McLean v. Farmers, &c., Co., (Colo.) 98 Pac. 16; Board v. McComb, (U. S.) 23 L. Ed. 623; Pennoyer v. McConnaughy, (U. S.) 35 L. Ed. 366). Moreover, this action is a suit against the state, which cannot be brought except as authorized by law.

*Will McMurray* and *N. E. Corthell,* for defendants in error.

The affidavits used on the hearing of the application for temporary injunction are not properly a matter of record in this cause. No question arises here upon the sufficiency of the evidence or the propriety of the rulings in the admission and rejection of evidence, for the motion for a new trial fails to specify any particular evidence or rulings as error. The only allegations of the petition which were denied by the answer are those referring to the ownership of the ditch by the city, the use of the appropriation before and after its adjudication, the conspiracy between the defendants and the forcible and wrongful deprivation by them of the use of the water by the plaintiffs. The answer contained much argumentative matter and many evidentiary facts, evidently in-

tended to state in substance that the decree of the board of
control was wrongful and not justified by the facts of the
appropriation. These matters, however, were stricken from
the answer. If it should be conceded that the city was with-
out any right or capacity to acquire the ditch and water
right, then the same would remain the property of the Cow-
pers, the other plaintiffs in the case, and the unlawful at-
tempt of the city to acquire it would not have the effect of
destroying the right, but would leave it where it was. There-
fore, without considering the city's rights, the other plaintiffs
are clearly entitled to maintain the action for the protection
of their rights. But the contention that the city could not
acquire the property is not tenable. Ample provision there-
for is found in the statutes. (Const. Art. 8, Sec. 5; Comp.
Stat., Secs. 725, 726, 1422, 1440, 1474-1476, 1866, 1867,
1876, 1887, 3829, 3831; Edwards v. Cheyenne, 19 Wyo.
110). And the provision for the temporary continuance of
the use of the water in the manner and for the purpose for
which it had previously been used was also legal and proper.
(Edwards v. Cheyenne, *supra*). The water officials are
without any authority to repudiate the decree of the board
of control adjudicating the priorities of rights to the water
of the stream in question. In the absence of that decree
there would be no power in any official to regulate the flow
or apportion the use of the water of the stream. Such ad-
ministrative action is only permitted by the statute after
priorities have been adjudicated. (Ryan v. Tutty, 13 Wyo.
122; Farm Inv. Co. v. Carpenter, 9 Wyo. 110). The de-
cree of the board is final and conclusive. (3 Kinney on
Irr. 1593; Montrose Canal Co. v. Ditch Co., 23 Colo. 233;
Irr. Co. v. Trust Co., 32 Colo. 102; O'Brien v. King, 92
Pac. 943; Ditch Co. v. Adams, 29 Colo. 317). The theory
of the water officials that there had been a change in the
tract of land to which the water was applied and, therefore,
the priority had been forfeited or abandoned cannot be sus-
tained. (Johnston v. Irr. Co., 13 Wyo. 208; Hard v. Irr.
& Land Co., (Ida.) 76 Pac. 331). The statute imposing a
forfeiture must be construed strictly, and there can be no

forfeiture until it has been judicially determined. (19 Cyc. 1358, 1359). But the question of the forfeiture or the abandonment of the water right must be determined by a proceeding in a court of competent jurisdiction,· and the necessary parties in interest must be before the court in an appropriate proceeding. Until such determination, it is the ' duty of the water officials to distribute the water in accordance with the statutory adjudication. They cannot raise and are not interested in the question of the exercise of rights by appropriators. (Boulder Ditch Co. v. Hoover, 48 Colo. 343; Coombs v. Farmers &c. Co., 38 Colo. 420). That this is not a suit against the state, but is maintainable against these officers is well settled. (Reagan v. Farmers L. & T. Co., 154 U. S. 362).

BEARD, JUSTICE.

This action was brought by the defendants in error against the plaintiffs in error and Carson Adams, water commissioner, to enjoin them from closing a headgate and shutting off a part of the water claimed by plaintiffs below. The district court granted an injunction, and plaintiffs in error appeal.

It appears that the Cowpers were the owners of certain lands, and on March 26, 1892, in a proceeding for the adjudication of the waters of Soldier creek, the board of control granted to the Home Ditch or Home Water Ditch the first and prior right to the use of the waters of said creek in the amount of 1.8 cubic feet per second of time for the irrigation of 120 acres of the Cowper lands, said ditch being owned by them and taking water from said creek. On December 31, 1910, the Cowpers sold and conveyed to the City of Laramie said ditch and water right, and by agreement between them the Cowpers continued to use the ditch and water to irrigate a part if not all of said lands until July 12, 1912, when defendants shut off the water from said ditch except .38 of a cubic foot. The plaintiffs alleged that at that time and at the time of the commencement of this action, July 27, 1912, they desired to irrigate all of the 120

acres. Adams made default, and the other defendants, the
state engineer and the division superintendent, answered and
admitted that only .38 of a cubic foot of water was allowed
by them to flow down the creek to the headgate of said
ditch; but sought to justify their action in so doing by
pleading and offering to prove among other things that
neither the plaintiffs or their grantors had at any time either
before, at or after the time of said adjudication by the board
of control used or applied to beneficial uses to exceed .38 of
a cubic foot of water or had irrigated to exceed 20 acres of
land by means of said ditch, and that it was not so con-
structed as to be capable of irrigating more than 60 acres.
The court, on motion of plaintiffs, struck out the allegations
of the answer by which defendants sought to show that the
plaintiffs were not entitled to the amount of water awarded
to said ditch by the Board of Control, evidently being of
the opinion that the State Engineer and his subordinates
were limited in their powers in the distribution of the
waters of the stream to distribute the same according to
the priorities established by the board and in the quantity
so established. Whether that ruling was or was not correct
is the main question in the case.

At the time the adjudication of the water rights on
Soldier creek was made by the Board of Control, it was the
duty of the State Engineer to make an examination of the
stream, and the works diverting water therefrom, includ-
ing the measurements of the discharge of the stream, and
of the carrying capacity of the various ditches and canals
diverting water therefrom; and an examination of the irri-
gated lands, and an approximate measurement of the lands
irrigated, or susceptible of irrigation from the various
ditches and canals, which observations and measurements
were required to be reduced to writing, and made a matter
of record in the Engineer's office. (Ch. 8, Sec. 24, S. L.
1890-1; Comp. St. 1910, Sec. 776). After the completion
of such measurements and the return of the evidence taken
by the Division Superintendent, the Board of Control was
required to make and enter of record in its office, an order

determining and establishing the priorities of rights to the use of the waters of the stream, and the amounts of appropriations of the several persons claiming water from such stream, and the character and kind of use for which said appropriation shall be found to have been made. Each appropriation shall be determined in its priority and amount by the time by which it shall have been made, and the amount of water which shall have been applied for beneficial purposes. (Ch. 8, Sec. 25, S. L. 1890-1; Comp. St. 1910, Sec. 777). We have referred to these provisions of the statute for the reason that the answer of defendants, while admitting the adjudication of the water rights on Soldier creek as alleged in plaintiff's petition, "deny that at that time that the State Engineer or any officer of the Board of Control either made or was required by law to make any examination of any claimed ditch for which a water right was adjudicated but accepted in that behalf the sworn statement of the parties claiming the same"; and for the further purpose of showing that in determining the rights and priorities of the several claimants the Board of Control was required to ascertain and determine the carrying capacity of the ditches and the amount of land then irrigated or susceptible of irrigation by means of each ditch and the amount of water appropriated to each ditch or canal. By the adjudication of the board, the plaintiffs were entitled to use 1.8 cubic feet of water per second of time if they desired to do so, and while applying it to the beneficial uses for which appropriated. Neither the State Engineer nor his subordinates had the right to change, modify or annul that adjudication, or to prevent plaintiff from the use of that amount of water, except to prevent waste. The duty of the officers authorized and required to distribute the water of a stream is to divide the water according to the rights of the appropriators as determined by the Board of Control. That is their authority for the distribution, and without it they cannot lawfully make such distribution. In Ryan v. Tutty, 13 Wyo., 122-131, 78 Pac. 661, 663, in speaking of the powers and duties of such

officers this court said: "But it is to be observed that the statute clearly contemplates that such official action shall be based upon a record of adjudicated priorities. They are not vested with arbitrary control, but are required to divide the water according to the prior rights of the interested parties." And again on page 133 of 13 Wyo., on page 664 of 78 Pac.: "Primarily, the commissioner is authorized, whenever legally called upon, and it is his duty, to see that the water of a particular stream is diverted in accordance with the established priorities, and to prevent anyone from taking more water than he is entitled to take to the injury of others. He is not authorized to determine priorities." That construction of the statute was approved in Hamp v. State, 19 Wyo., 377-395, 118 Pac. 653. The adjudication by the Board of Control as to the quantity of water to which an appropriator is entitled is as conclusive upon the water distributers as its determination of priorities, with the exception that he may regulate a headgate so as to prevent waste. For the purpose of governing those officers in the discharge of their duties in dividing the water between appropriators the adjudication by the Board of Control is as conclusive as though an appeal had been taken from its decision and a decree entered by the court; and until set aside or modified in a proper proceeding, in which the interested parties are given an opportunity to be heard, are final so far as the water officials are concerned except as above stated. If it were not so, then our entire system for granting appropriations of the waters of the State and establishing the priorities and the quantity of water each appropriator is entitled to is a vain thing. It must be remembered that this is not an action between water users to determine their respective rights, but an action to require administrative officers in their official capacity to distribute the waters of Soldier creek according to the rights as established by the Board of Control. They are not empowered to determine questions of forfeiture or abandonment. The Supreme Court of Colorado in passing upon that question in Boulder and Left Hand Ditch Co. v.

Hoover, Water Commissioner, et al., 48 Colo. 343, 110 Pac. 75, said: "The impropriety of irrigation officers, seeking to have matters, in which they have no personal or private right, determined, in an action in which they, in an official capacity only, are defendants, is manifest. That question must be litigated in a suit between parties whose rights are directly involved. This is a suit by the owner of a water right against officials, charged with the duty of the distribution of water, under decreed rights, between the several users thereof, within their jurisdiction, to compel action accordingly. It is neither their duty nor privilege to question the decrees, where regular in form, in full force and unmodified, or to attempt to impeach or nullify them, or in any way impair their efficiency. While it may be that there is a degree of discretion vested in these officers respecting the discharge of their duties, it never was contemplated that they should assume the burden of litigating questions of dispute between the several water claimants, with reference to their respective right under decrees duly rendered and in full force. Primarily their duties are to enforce the decrees of the various claimants to and users of water from a common source, according to their terms. These officers are not concerned in controversies between the various users of water, which may only be adjudicated in proper proceedings, brought for that purpose, by those who are the real parties interested in and affected thereby." The court therefore did not err in striking out those parts of the answer which denied that plaintiffs ever acquired any water right, and also the allegations of forfeiture or abandonment.

While the water is to be distributed according to established priorities, the statute also provides that the water commissioner shall, as near as may be, divide, regulate and control the use of the water of all streams within his district by such closing or partial closing of the headgates as will prevent the waste of water, or its use in excess of the volume to which the appropriator is lawfully entitled. (Sec. 802, Comp. St. 1910). The volume of water to

which an appropriator is entitled at any particular time is
that quantity, within the limits of the appropriation, which
he can and does apply to the beneficial uses stated in his
certificate of appropriation. It may be more at one time
than at another; and, as we understand the statute, it is for
the purpose of regulating the quantity from time to time to
which an appropriator is so entitled that the Water Com-
missioner is given authority to close or partially close a
headgate so as to prevent waste of water, and to secure to
prior appropriators the quantity of water to which they are
entitled; and in the performance of his duties and while
exercising a sound discretion and reasonable care in so
doing, he is not subject to control by the courts. His acts
in so doing are temporary and the quantity may and should
be changed from time to time as the needs of an appropria-
tor require. But in exercising that duty he has no author-
ity to determine whether or not a water right has been for-
feited or abandoned or to prevent an appropriator from
taking the full quantity of water awarded by the Board of
Control, when he is prepared to and desires to use it for the
purposes, stated in his certificate of appropriation. In that
part of the amended answer which was stricken out by the
court, after alleging complaint by a junior appropriator to
the State Engineer, and an examination of the conditions
by his deputy, it is alleged, "that thereupon the State Engi-
neer directed that there be allowed to run down the creek
to the headgate of the said Home Ditch thirty-eight one-
hundredths (.38) of a cubic foot of water per second of
time, which was the largest quantity of water that could be
run through said ditch and applied to the irrigation of lands
described in the permit and adjudication by the Board of
Control to plaintiffs' grantors through said Home Ditch."
This allegation, we think, when fairly and liberally con-
strued, presents the defense by the distributing officers,
that they allowed all of the water to reach the headgate of
said ditch, that in its then condition could be conducted
through it and applied to the purposes for which the permit
was granted. If those were the facts, then plaintiffs were

not injured by the acts of the officers; and it is fair to presume that when plaintiffs are prepared to use and apply more water, they will be permitted by the officers to do so to the amount determined by the board. We think the defendants should have been allowed to plead and prove, if they could, that plaintiffs were permitted to use all the water that was being then applied or that they were then in a position to and desired to apply to beneficial uses under the adjudication; and that the District Court erred in striking out that part of defendant's amended answer. Some other questions have been presented by counsel for plaintiffs in error, but they admit that they are technical and that the question herein determined disposes of the case on the merits. For the error above stated the judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.                                           *Reversed.*

POTTER, J., concurs.

SCOTT, C. J., did not participate in the decision.