Argued April 3, affirmed May 1, 1923.

# SQUAW CREEK IRRIGATION DISTRICT. *v.* MAMERO ET AL.

### (214 Pac. 889.)

**Waters and Watercourses—Use of Water Right by Owner Under Decree cannot be Changed to Affect Other Lands Without Approval of State Water Board.**

1. Under Section 5707, Or. L., making it the duty of the watermaster to prevent the excessive use of water, and to prevent waste, and Section 5764, requiring the approval of the state water board before the owner of a water right can change its place of use, where a decree determining water rights gave an irrigation company a water right appurtenant to described lands with priority from 1895 and another water right appurtenant to other described lands, with priority from 1904, the company's successor in interest could not use water delivered under the first right on lands to which the second right was appurtenant without prior approval of the state water board, regardless of Laws of 1891, p. 52, authorizing a corporation organized for general irrigation purposes to appropriate water, Section 1 of which provided that the use should be general when water was supplied to all persons within reach of the canal or flume without discrimination other than priority of contract, and Section 9 of which provided that the actual capacity of the ditch should determine the extent of appropriation, since the

---

1. Transfer of right to use water for irrigation, see note in 65 L. R. A. 407.

company's rights and duties under this statute were involved in, and concluded by, the decree determining the water rights.

**Judgment—Decree as to Water Rights Binding on Successor in Interest of Original Party.**

2. Where an irrigation company was an actor in a proceeding in which a decree determining water rights was entered, the decree was conclusive as to the rights of the company adjudicated therein, and bound the company's successor in interest.

**Waters and Watercourses—Beneficial Use of Water Necessary to Establishment of Water Right.**

3. Before a court is authorized to declare an irrigation company entitled to a water right, it is essential that the water claimed should have been applied to a beneficial use, and appropriations by such a company are not completed and do not ripen into perfect water rights until a beneficial use of the water has been made.

**Waters and Watercourses—Owner of Water Rights may Change Place of Use if Rights of Others are not Injured.**

4. An owner of a water right may change the place of its use if such change does not injure the rights of others.

**Waters and Watercourses—Statute Requiring Water Rights for Irrigation to Remain Appurtenant to Land on Which Used Held Valid.**

5. Section 5764, Or. L., providing that all water used for irrigation purposes shall remain appurtenant to the land upon which it is used, is a valid exercise of the legislative power to regulate and control the use and distribution of the waters of the state.

**Waters and Watercourses—Lack of Approval of State Water Board of Change of Use of Water a Defense in Suit to Enjoin Watermaster's Preventing Such Change.**

6. In an action by an irrigation district to restrain the watermaster from shutting off water equal in amount to that which plaintiff received under a right with priority from 1895 and used on lands which had priority in water rights from 1904, the fact that the state water board had not approved the change in use, as required by Section 5764, Or. L., can be set up by the water-master, since his duty under Section 5707 is to regulate the water supply so as to prevent waste of water and its use in excess of the volume to which the owner of any water right is entitled, and the proposed use of the water without approval of the board constituted waste.

From Deschutes: T. E. J. DUFFY, Judge.

In Banc.

For appellants there was a brief over the names of *Mr. Jay H. Upton, Mr. George T. Cochran* and *Mr. M. R. Elliott*, with oral arguments by *Mr. Upton* and *Mr. Cochran*.

For respondents there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, *Mr. Willis S. Moore,* Assistant Attorney General, and *Mr. A. J. Moore,* District Attorney for Deschutes County, with an oral argument by *Mr. Moore.*

Affirmed.

McCOURT, J.—Plaintiff is an irrigation district. It prosecutes this appeal from a decree dismissing its complaint, in which it prayed for a decree restraining defendants C. N. Sorenson, Water-master, and Percy A. Cupper, State Engineer, from distributing the waters of Squaw Creek, Deschutes County, in violation of the alleged rights of plaintiff to the use of the waters of that stream.

Besides the officials above named, a number of individuals and corporations were named as defendants, all of whom made default. No further notice need be taken of the defaulting parties.

When the cause was at issue, it was heard and determined by the Circuit Court upon an agreed statement of facts.

1. The irrigation district (plaintiff) was organized subsequent to 1914 by the water users from the ditches, canals and flumes of the Squaw Creek Irrigation Company, a corporation formed to construct the aforesaid ditches, canals and flumes for general irrigation purposes, under the act of the legislative session of 1891 (Laws 1891, p. 52 et seq.). To obtain its water supply, the corporation appropriated and diverted water from Squaw Creek, a tributary of the Deschutes River. Upon its organization, plaintiff acquired the irrigation works and water rights of the Squaw Creek Irrigation Company.

Prior to May 1, 1911, a proceeding was initiated before the Board of Control (now State Water Board), for the purpose of determining the relative rights of the various claims to the waters of said Squaw Creek, as authorized by Chap. 216, Laws 1909 (Sections 5731–5767, Or. L.). The Squaw Creek Irrigation Company appeared in that proceeding, and filed a statement of its claims to the use of the waters of Squaw Creek, and submitted proof in support of those claims.

The findings and order made by the Board of Control in that proceeding were appealed to the Circuit Court, where, on May 1, 1911, a decree was entered fixing and determining the relative rights to the use of the waters of Squaw Creek for irrigation and domestic purposes, and thereafter on September 19, 1914, the same court, in the same proceeding, made and entered its supplemental decree, fixing, making and allowing a further additional and final determination and adjudication of the rights to the use of the waters of that stream for irrigation and domestic purposes. References hereafter made to the decree will include the supplemental decree given and made in that proceeding.

The decree awarded to the Squaw Creek Irrigation Company two water rights material to this suit, one with a priority of the year 1895, entitling the corporation to 125.66 second-feet of water for the irrigation of 6,283 acres; and the other with a priority of the year 1904 and of sufficient extent to irrigate about 4,000 additional acres. Each water right was declared by the decree to be appurtenant to definitely described lands.

Of the water to which the Squaw Creek Irrigation Company was entitled under its priority of 1904,

the decree declared a quantity sufficient to irrigate twenty-five acres of land, owned by Viola Arnold, and situated in southwest quarter of northeast quarter of section 18, township 15 S., R. 11 E., W. M., to be appurtenant to the tract described.

During the irrigation season of 1921, plaintiff, as the successor in interest of the Squaw Creek Irrigation Company, was not using the maximum quantity of water allotted to it under its priority of 1895 upon the lands to which the same was declared appurtenant by the decree. Plaintiff undertook to use sufficient of that water to irrigate the above-described lands of Viola Arnold.

The defendant C. N. Sorenson commanded plaintiff to discontinue the use of water diverted to plaintiff under its 1895 priority right on the lands of Viola Arnold, and thereupon shut off from the ditch of plaintiff an amount of water equal to the amount thus attempted to be conducted by plaintiff upon the lands of Viola Arnold, and caused a like amount of water to be distributed to other lands that had rights prior to 1904 and subsequent to 1895 to the use of waters from Squaw Creek.

This suit was commenced to restrain the action of the water-master, and to compel the state officials in charge of the distribution of the waters of Squaw Creek, to distribute to plaintiff 125.66 second-feet of water under its priority of 1895, before turning out or diverting any water for the use of land owners having water rights entitling them to the use of the waters of Squaw Creek under priority dates subsequent to 1895 and prior to 1904.

In support of its claim to injunctive relief, plaintiff contends that, notwithstanding the provision of the decree that the water to which it is entitled is ap-

purtenant to a definitely described body of land, it has the right, limited only by the maximum quantity of water decreed to its predecessor in interest, to supply water for irrigation to all persons whose lands lie adjacent to, or within reach of, the line of its ditches, canals and flumes, in the same manner and to the same extent as its predecessor might have done while completing and perfecting its appropriation of the waters of Squaw Creek.

Defendants, on the other hand, contend that the use of water to which plaintiff is entitled under the decree, is restricted to the lands to which the same was declared to be appurtenant; that the beneficial use upon which plaintiff's water rights rest and the places of such use were fixed by the decree; that the attempt of plaintiff to use the water elsewhere constitutes legal waste of those waters, which it is within the authority of defendants to prevent.

Approximately seventy claims, including that of the Squaw Creek Irrigation Company, to the use of the waters of Squaw Creek, were recognized, determined and adjudicated by the decree. The decree, conforming to the directions of the statute (Section 5754, Or. L.), declared as to the water right adjudged to each party, the extent; the priority, amount, place of use and the specific tracts of land to which it was appurtenant.

The Squaw Creek Irrigation Company did not irrigate any lands of its own; it supplied water for purposes of irrigation and domestic use to about ninety persons, firms and corporations, whose lands were adjacent to, or within reach of, its ditches, canals and flumes, upon payment of charges therefor. Accordingly the decree set forth the names of the several users of water, and in each instance, de-

scribed the specific tract upon which the water was used, and declared the water so used to be appurtenant to that land.

At the time the decree of May 1, 1911, was entered, the Squaw Creek Irrigation Company had not completed its said appropriation of 1895, by applying all the water which it claimed thereunder to a beneficial use. Thirty-two persons to whom it intended to supply water, had not prepared their lands to receive water, and had not used water thereon. Likewise, the water right it claimed under its appropriation of 1904 had not been perfected. The lands of twenty-nine proposed water users thereunder, had not been prepared for irrigation, and water had not been applied thereto.

To meet that situation and allow the Squaw Creek Irrigation Company to perfect its rights to the waters claimed under its appropriation, a provisional decree was entered, allowing it until October 1, 1912, to complete the same and apply the water claimed thereunder to the intended beneficial use.

The supplemental decree of September 19, 1914, recited that in the meantime water had been applied to the lands above indicated by the owners thereof, and that the appropriations declared to be incomplete in the decree of May 1, 1911, were then perfected, and accordingly, the Squaw Creek Irrigation Company was adjudged to own water rights based upon such beneficial use.

2. The Squaw Creek Irrigation Company was an actor in the proceeding in which the decree was entered, and that decree is conclusive as to any and all rights of the corporation adjudicated therein between the claimants on the stream, and likewise binds plaintiff, as its successor in interest: *In re Waters of*

*Chewaucan River,* 89 Or. 659, 687 (171 Pac. 402, 175 Pac. 421).

3. Before the court was authorized to declare the predecessor of plaintiff entitled to a water right, it was essential that the water claimed should have been applied to a beneficial use. That use in this case was the irrigation of specific tracts of land which absorbed the whole of all the valid appropriations of water made by the Squaw Creek Irrigation Company.

The appropriations made by the corporation were not completed, and did not ripen into perfect water rights, until that beneficial use of the waters had been made. The water rights thus perfected are therefore founded upon the beneficial use mentioned, and not upon some other use to which the water might have been, but was not, applied.

It does not appear that the Squaw Creek Irrigation Company, in the adjudication proceedings, made any claim to use the waters embraced in either of its appropriations, upon lands other than those to which, by the decree, that water is declared to be appurtenant, and no provision was made in the decree permitting such use.

There is nothing in the record to indicate that the Squaw Creek Irrigation Company ever used, or intended to use, any of the waters claimed by it under either of its aforesaid water rights, for the irrigation of any other lands than those described in the decree, the irrigation of which sustains a water right of a given date.

Plaintiff, however, as the successor in interest of the Squaw Creek Irrigation Company, finding that the water awarded under the claim made by the corporation in the adjudication proceedings, is more

than sufficient during some seasons to meet the requirements of the several water users under the rights granted by the decree, proposes to use the excess water upon lands other than those to which the water is declared to be appurtenant, the irrigation of which was in no way connected with the perfection of the right to the use of that water.

The proposed use is based upon the statute (Laws 1891, p. 52), authorizing a corporation organized for the construction and maintenance of a ditch or canal or flume for general irrigation purposes, to appropriate and divert water from lakes or running streams. Section 1 of that act provided:

" A use shall be deemed general within the purview of this act when the water appropriated shall be supplied to all persons whose lands lie adjacent to or within reach of the line of the ditch or canal or flume in which said water is conveyed, without discrimination other than priority of contract, upon payment of charges therefor, as long as there may be water to supply."

Section 9 of the act provided:

" * * and the actual capacity of said ditch or canal or flume, when completed, shall determine the extent of the appropriation * * ."

Plaintiff insists that the foregoing statutory provisions vested a right in its predecessor and imposed upon it a duty, to which plaintiff has succeeded, of supplying water to any lands adjacent to, or within reach of, the line of its ditch, canal or flume, and that the decree did not and could not deprive it of that vested right, or relieve it of the legal duty mentioned.

While it does not appear from the record that the claim now made by plaintiff was asserted or ad-

vanced by its predecessor in the adjudication proceedings, it was nevertheless involved therein, and is concluded by the decree. The adjudication that the water rights claimed by, and awarded to, plaintiff's predecessor were appurtenant to definitely described land, the irrigation of which completed such appropriations, amounted to a rejection of the claim now made and a determination that the right now asserted was not possessed by plaintiff's predecessor. The claim cannot be relitigated in this suit.

Whether the court in that proceeding might have decreed to plaintiff's predecessor a water right or water rights for the irrigation of all the lands within the reach of its ditch, canal or flume, or might have declared the water to which it was entitled by such water rights, appurtenant to all of the lands so within the reach of its ditch, canal or flume, is not material and need not be decided upon this appeal. That was not done. The decree made no such provision; the use of water was confined by the decree to the lands described, and any use now made of the water upon other lands than those to which it is declared to be appurtenant, amounts to a change of place of use.

4. That the owner of a water right may change the place of its use, providing such change does not injuriously affect the rights of others, is not and cannot be disputed: *Cole* v. *Logan,* 24 Or. 304 (33 Pac. 568); *Wimer* v. *Simmons,* 27 Or. 1 (39 Pac. 6, 50 Am. St. Rep. 685); *Nevada Ditch Co.* v. *Bennett,* 30 Or. 59, 93, 94 (45 Pac. 472, 60 Am. St. Rep. 777); *Hough* v. *Porter,* 51 Or. 318, 438 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728); *In re Willow Creek,* 74 Or. 636, 638 (144 Pac. 505, 146 Pac. 475); *Johnson* v. *Little Horse Irrigating Co.,* 13 Wyo. 208 (79 Pac. 22, 110 Am. St.

Rep. 986, 70 L. R. A. 341); Kinney on Irrigation and Water Rights (2 ed.), § 768.

5. The right of the owner of a water right to change the place of use is recognized by the statute, but the approval of the state water board, upon written application of the owner, is required before any such change is made: Section 5764, Or. L. The statute which contains the provisions that "all water used in this state for irrigation purposes shall remain appurtenant to the land upon which it is used," is a valid exercise of the legislative power to regulate and control the use and distribution of the waters of the state: Kinney on Irrigation and Water Rights (2 ed.), § 1341; *In re Willow Creek*, 74 Or. 636, 638 (144 Pac. 505, 146 Pac. 475); *In re Althouse Creek (Appeal of Leonard)*, 85 Or. 228 (162 Pac. 1072).

Plaintiff did not apply for or secure the approval of the state water board to use water upon lands to which the same was not appurtenant by the terms of the decree.

*In re Willow Creek, supra,* referring to the provision of the above-mentioned statute, requiring approval of the state water board before a change in the place of use of waters can be made, Mr. Justice BEAN said:

"It would seem that the main purpose of said portion of Section 6668 (L. O. L.) is to make provision for preserving the record of water rights which have been adjudicated, and require one changing the use to make an application therefor to the water board. Otherwise the record of adjudicated water rights would become confused and worthless."

The approval of the state water board, granted upon the application of the owner to transfer the

same, is a condition precedent to the exercise of the right to change the place of the use of water from that specified by the decree in a proceeding for the adjudication of water rights. Without such application and approval, any such change is without authority, and in violation of the express inhibitions of the statute.

6. Plaintiff insists, however, that the failure of the owner of a water right to secure the approval of the state water board to his use of water upon lands to which the same is not appurtenant, is a matter which concerns only those parties who may be injured by the change, and presents no question which the water-master is authorized to determine or act upon in distributing the waters of the stream. Plaintiff argues that the water-master is an administrative officer, whose authority is limited to measuring out and distributing to plaintiff and other water users upon the stream, the maximum quantity of water to which each is entitled under the priorities specified in the decree. Plaintiff cites: *In re Umatilla River,* 88 Or. 376, 400 (168 Pac. 922, 172 Pac. 97); *Boulder Ditch Co.* v. *Hoover,* 48 Colo. 343 (110 Pac. 75, 77); *Parshall* v. *Cowper,* 22 Wyo. 385 (143 Pac. 302). Also see: *Ryan* v. *Tutty,* 13 Wyo. 134 (78 Pac. 661, 664); *Hamp* v. *State,* 19 Wyo. 377 (118 Pac. 653).

The extent of the authority of the water-master was lucidly stated by the court in the case of *Parshall* v. *Cowper, supra:*

"The volume of water to which an appropriator is entitled at any particular time is that quantity, within the limits of the appropriation, which he can and does apply to the beneficial uses stated in his certificate of appropriation. It may be more at one time than at another; and, as we understand the statute, it is for the purpose of regulating the

quantity from time to time to which an appropriator is so entitled that the water commissioner is given authority to close or partially close a headgate, so as to prevent waste of water, and to secure to prior appropriators the quantity of water to which they are entitled; and in the performance of his duties, and while exercising a sound discretion and reasonable care in so doing, he is not subject to control by the courts. His acts in so doing are temporary, and the quantity may and should be changed from time to time, as the needs of an appropriator require. But, in exercising that duty, he has no authority to determine whether or not a water right has been forfeited or abandoned or to prevent an appropriator from taking the full quantity of water awarded by the board of control, when he is prepared to and desires to use it for the purposes stated in his certificate of appropriation.''

In the case of *Nault* v. *Palmer,* 96 Or. 538 (190 Pac. 346), involving several water rights having priorities of different dates, Mr. Justice BURNETT aptly described the situation here and its legal results, as follows:

''Anyone having priority in the use of water is entitled so to use it that its highest duty will be effected. He can employ it to the best advantage of the tract to which it is appurtenant. He cannot be compelled to use it in advance of such a situation. On the other hand, he cannot postpone the use of water at its best upon that tract in favor of a separate parcel junior to another which in turn is junior to the first tract, and then, after having used it on the tract junior to all, take it up and give belated use on the first tract, to the injury of the intermediate user. This would be a perversion of the order of priority, constituting a legal waste; in other words, it would be wasting the senior appropriation as against the immediate junior and in favor of one junior to all others. It is the duty of

the water-master under the statute to preserve the priorities and the quantities consistently with the highest duty of water, as applied to all concerned.''

The statute makes it the duty of the water-master to regulate the headgates of ditches so as to prevent the waste of water, or its use in excess of the volume to which the owner of any water right is lawfully entitled: Section 5707, Or. L.

Without the prior approval of the state water board, the irrigation of the lands of Viola Arnold by waters to which plaintiff was entitled under its priority of 1895 was unlawful and constituted waste, which it was the duty of the water-master to prevent. In so doing, the water-master was carrying out the directions of the decree, and his action cannot be restrained.

The decree of the Circuit Court is affirmed.

AFFIRMED.