QUINN ET AL. v. JOHN WHITAKER RANCH CO. ET AL.

(No. 2106; July 11, 1939; 92 Pac. (2d) 568)

368

For the plaintiffs in error, the case was submitted on the brief of *Ewing T. Kerr*, Attorney General; *Harold I. Bacheller*, Deputy Attorney General; and *Arthur Kline*, Assistant Attorney General, all of Cheyenne, Wyoming.

370

For the defendants in error, there was a brief by
*C. R. Ellery* and *A. G. McClintock* of Cheyenne, and
oral argument by *Mr. Ellery.*

KIMBALL, Justice.

This is a proceeding in error for review of a declaration of rights in an action under the Uniform Declaratory Judgments Act, §§ 89-2401 to 89-2415, R. S. 1931. The question is whether a state statute prescribing the minimum duty of water appropriated for irrigation has the effect of limiting the quantity of water under rights initiated under Territorial laws and adjudicated by decree of the Territorial courts.

Plaintiffs are users of water for irrigation under rights adjudicated by decree made in July, 1889, by the Territorial District Court which at that time had exclusive original jurisdiction of the statutory proceeding to determine priorities of appropriations of water. (Sec. 1339, R. S. 1887.) The court was authorized to determine, among other things, "the amount of water which shall be held to have been appropriated (by the construction of the irrigation works) describing such amount by cubic feet per second of time * * * if the evidence shall show sufficient data to ascertain such cubic feet * * *." Sec. 1345, R. S. 1887. A law of 1888 provided that the decree should be recorded in the office of the Territorial Engineer who was required to send to the Water Commissioner a statement showing, among other things, "the quantity of water per second of time to which said ditch is declared by such decree to be entitled, to be expressed in cubic feet per second of time," and that "thereafter, in the supervision of the distribution of the waters of such stream by said ditches so adjudicated upon, it shall be the duty of said

water commissioner to be guided by such statement." Sec. 9, ch. 55, Sess. Laws, 1888.

Our attention has not been called to any statute that placed a limitation on the amount of water to be allotted to an appropriator by the court in the Territorial proceeding to determine priorities, except section 14, ch. 55, Laws of 1888 which provided: "The priority of right to the use of such water shall be limited and restricted to so much thereof as may be necessarily used and appropriated for irrigation or other beneficial purposes as aforesaid, irrespective of the carrying capacity of the ditch, and all the balance of the water not so appropriated shall be allowed to run in the natural stream from which such ditch draws its supply of water, and shall not be considered as having been appropriated thereby." This provision with slight changes is still a part of the irrigation law. Sec. 122-421, R. S. 1931.

The decree of July, 1889, was made in an action entitled "In the Matter of an Application for the Adjudication of the Priorities of Rights to Use of Water for Beneficial Purposes in Water District No. 1 on Horse Creek." The determination of the quantity of water appropriated by each of plaintiffs' predecessors in interest was shown by provisions that differ only in names, amounts, dates and priorities. The following is an abbreviated sample: That M. & M. are entitled to sufficient water to irrigate 100 acres of land, on account of M. ditch No. 6, not exceeding in amount 2.61 cubic feet per second of time, said appropriation dating from May 31, 1874, and that the right of said M. & M. to the use of water from said Horse Creek through said M. ditch No. 6, for the purpose aforesaid is prior and superior to any other right to the use of water from said creek. It was adjudged that M. & M. do have the use of water from said Horse Creek for the irrigation of 100 acres of land on account of said M. ditch No. 6

and for said purpose said M. & M. do have water from said Horse Creek to the amount of 2.61 cubic feet of water per second of time, and that the right of said M. & M. to the use of water to the amount and for the purpose aforesaid is prior and superior to any other right to the use of water for beneficial purposes from said creek.

The stated amount of water, in each instance, exceeded one cubic foot per second of time for 70 acres of land.

The Territory became a State in July, 1890, and thereafter, in December, 1890, the first State Legislature passed a rather comprehensive water law (ch. 8, Sess. Laws, 1890-1891) to carry out constitutional provisions which, among other things, declared that a board of control should have supervision of the appropriation, distribution and diversion of the waters belonging to the state. The legislative act established the Board of Control with authority to determine priorities of appropriations. It was provided that after the Board had decided which streams should be first adjudicated, stream measurements should be made and evidence taken, and (by section 25) that:

"At the first regular meeting of the board of control, after the completion of such measurement by the state engineer, and the return of said evidence by said division superintendent, it shall be the duty of the board of control to make, and cause to be entered of record in its office, an order determining and establishing the several priorities of right to the use of waters of said stream, and the amount of appropriations of the several persons claiming water from such stream, and the character and kind of use from which said appropriation shall be found to have been made. Each appropriation shall be determined in its priority and amount, by the time by which it shall have been made, and the amount of water which shall have been applied for beneficial purposes. *Provided,* That such appropriator shall at no time be entitled to the use of more water

than he can make a beneficial application of on the lands, for the benefit of which the appropriation may have been secured, and the amount of any appropriation made by reason of an enlargement of distributing works, shall be determined in like manner. *Provided,* That no allottment shall exceed one cubic foot per second for each seventy acres of land for which said appropriation shall be made."

The last proviso is the part that is important in this case. The whole section has continued in force (now sec. 122-117, R. S. 1931, as amended by ch. 105, Sess. Laws of 1935) with amendments not material in this case. The last proviso as contained in the act of 1890 has not been changed except by an amendment which limits its application to allotments "for the direct use of the natural unstored flow of any stream."

Apparently, until 1937, the state administrative officers had never asserted that water rights adjudicated under Territorial laws were affected by the statute limiting the quantity of water that could be alloted by the Board of Control under the act of the state legislature of 1890. There was testimony that each plaintiff had at some time during each year used the full maximum amount of water adjudicated to him by the decree of 1889. In the summer of 1937, however, the Water Commissioner, under instructions given by the State Engineer, notified plaintiffs that they would not be permitted to take water in amount in excess of one cubic foot per second for each seventy acres of land irrigated. Plaintiffs then brought this action for a declaratory judgment and for injunction, naming as defendants the State Engineer, Division Superintendent and Water Commissioner.

The pleadings and evidence raised no question of abandonment of plaintiffs' water rights (see Parshall v. Cowper, 22 Wyo. 385, 396, 143 Pac. 302) or of actual waste of water. Defendants' answer alleged that the use of more than one cubic foot of water per second

for 70 acres "is a wasteful use," but there was no evidence on the subject of waste, and it must be assumed that this allegation of the answer was merely an assertion of a conclusion as to the effect of act of 1890 now section 122-117, R. S. 1931.

The decree in this action contains the following findings which, we understand, are not questioned: Plaintiffs' ditches are sufficient to carry the full amount of water awarded to their diversions and ditches by the decree of 1889. Plaintiffs and their predecessors in interest have "at certain periods of time during the irrigation season diverted and used for the irrigation of said meadow lands the full quantity of water adjudicated to each of the diversions or ditches," and plaintiffs desire to continue that practice. Defendants have construed section 122-117, R. S. 1931, amended by chapter 105, session laws of 1935, as having the legal effect of reducing the quantity of water adjudicated to plaintiffs' predecessors in interest by the decree of 1889, and as restricting and limiting such rights to one cubic foot per second of time for each 70 acres, and threaten to refuse to allow plaintiffs to divert water in excess of that amount.

The decree declared: (1) That the rights of plaintiffs as to priority of right, quantity of water and extent of acreage are fixed, determined and established by the decree of 1889, and said rights must be recognized by the defendants so long as said decree remains in effect and unmodified. (2) That the legislature was without power to reduce the quantity of water awarded by said decree of 1889, or in any other manner to impair, take away or detrimentally affect plaintiffs' "vested water rights" so adjudicated. (3) That plaintiffs, as they may from time to time desire, are entitled under said decree of 1889 to divert and take the water of Horse Creek up to the full amount or quantity awarded by said decree until it be modified in some

proper proceeding. (4) That defendants be perpetually enjoined from interfering with said plaintiffs' right to divert the full quantity or amount of water awarded to their ditches by the decree of 1889, so long as it remains in effect and unmodified.

It seems that the contentions of the parties in the district court are somewhat modified by concessions made in argument in this court. The plaintiffs concede that, notwithstanding the decree of 1889 determining the maximum quantities of water to be used for the purposes therein stated, their rights are limited in accordance with statutes and court decisions declaring that the volume of water to which an appropriator is entitled at any particular time is that quantity, within the limits of the appropriation, which he can and does apply to the beneficial uses stated in the decree. See Sec. 14, ch. 54, Sess. Laws 1888, now sec. 122-421, R. S. 1931; Johnston v. Little Horse Creek Irr. Co., 13 Wyo. 208, 227, 79 Pac. 22; Parshall v. Cowper, 22 Wyo. 385, 395-396, 143 Pac. 302. Because of the nature of a water right, this limitation would exist in the absence of statute. The waters belong to the public or the state, and an appropriator cannot acquire a right that permits him to use more than is reasonably necessary for beneficial purposes. Farm Investment v. Carpenter, 9 Wyo. 110, 137, 139, 140, 61 Pac. 258, 50 L. R. A. 747, 87 A. S. R. 918.

We do not find in the statutes any expression of legislative intention to impose any other limitation on the quantity of water that may be used under rights adjudicated by Territorial courts. Section 122-117 speaks of adjudications by the state Board of Control, and rights previously adjudicated (only about 200 appropriations from 6 small streams, see Report of State Engineer for 1891-1892, p. 58) were not in mind. Whether the proviso of this section limiting the quantity that should be alloted by the Board applied to

rights initiated under Territorial laws and adjudicated by the Board under state laws is a question that seems never to have been judicially determined. The Board thought that it did not, but in determining Territorial rights not previously adjudicated the Board has usually, perhaps invariably, limited the quantity in accordance with the state statute, not by holding that the statute was controlling, but by deciding in each case that no more than the maximum statutory quantity was in fact needed for beneficial use. See State Engineer's Report for 1891-1892, p. 59. This practice was approved in Nichols v. Hufford, 21 Wyo. 477, 133 Pac. 1084, the court stating that it was unnecessary to decide whether the statute declaring that no allotment of water for irrigation shall be made by the Board of Control, in adjudicating priorities, exceeding one cubic foot per second for each 70 acres of land was a valid regulation as to appropriations made prior to its adoption.

The power of a legislature to change the maximum quantity of water adjudicated to an appropriator under previous laws may be doubted. See Enterprise Irr. Dist. v. Willis (Neb.) 284 N. W. 326. The question of power need not be decided. If the legislature has the power it has not been exercised.

Section 122-401, R. S. 1931, defining a water right declares, among other things, that: "Beneficial use shall be the basis, the measure and limit of the right to use water at all times, not exceeding in any case, the statutory limit of volume." This section has not been referred to by counsel, but we think our opinion should show that it has not been overlooked. The question proviso of section 122-117 is the only "statutory limit of volume" of water to one cubic foot per second for 70 acres, and as that limit refers only to rights adjudicated under state laws, it does not control the exercise of the rights of plaintiffs in this case.

Defendants, when the action was begun, were asserting that section 122-117 had the effect of establishing an absolute maximum limit on the quantity of water that plaintiffs should be permitted to use at any time, and continued to make that contention in the trial court. In this court, however, defendants' argument is that the statute should be considered as a declaration that one cubic foot of water per second is sufficient to irrigate 70 acres of land in the absence of any showing that more than that quantity is required. They would require the user under an adjudicated right to prove again the facts which it must be presumed he proved in the proceeding in which his right was determined. We have repeatedly held that it is the duty of the officers charged with superintendence of the diversion of water to make distribution in accordance with priorities as determined or adjudicated. See Laramie Irr. & Power Co. v. Grant, 44 Wyo. 392, 410, 13 P. (2d) 238, and cases cited. In Parshall v. Cowper, 22 Wyo. 385, 143 Pac. 302, the water right in question had been adjudicated by the Board of Control. The action was for injunction to prevent the distributing officers from shutting off a part of the water alloted by the adjudication. It was held that defendants could justify their action by pleading and proving "that plaintiffs were permitted to use all the water that was then being applied or that they were then in a position to and desired to apply to beneficial uses under the adjudication." It was evidently assumed that the burden was on defendants to show that plaintiffs were not entitled to the full maximum amount of water granted them by the adjudication. It was said that the adjudication as to the quantity of water was as conclusive upon the water distributor as the determination of priorities, "with the exception that he may regulate a headgate so as to prevent waste." In Hamp v. State, 19 Wyo. 377, 406, 118 Pac. 663, it was said that a decree adjudicating

water rights and priorities, as well as a certificate of appropriation, "must be regarded as *prima facie* evidence of the right to take the water as decreed."

We cannot hold that the legislature has declared that the use of a volume of water in excess of one cubic foot per second for 70 acres of land under an adjudication granting a larger quantity is *prima facie* evidence of waste. The evidence does not show that plaintiffs have ever asserted a need for the continuous flow of the maximum quantities stated in the decree of 1889. In this connection we refer to a report of Elwood Mead of an experiment made by him while Territorial Engineer to ascertain the duty of water. See Second Annual Report of Territorial Engineer of Wyo. for 1889, pp. 27 to 31. A tract of 123.7 acres was irrigated under favorable conditions by an experienced irrigator. The water was carefully measured where it was used and no allowance made for loss by seepage and evaporation from the main ditch. Though the average discharge for the season was only 1.32 cubic feet per second, the greatest quantity used at one time was 5.85 cubic feet per second, and the average discharge while water was being used was 3.79 cubic feet per second.

The trial court correctly held that plaintiffs' rights were not limited by the proviso of section 122-117, but we think some of the declarations go too far. The declarations numbered 2, referring to the power and authority of the Legislature should be struck. No constitutional question need be decided. The declarations numbered 3 might be misunderstood. They should be modified so that it will be clear that the quantity of water each appropriator is entitled to divert at any particular time is the quantity that is within the limits of the maximum fixed by the decree of 1889, and reasonably necessary for the irrigation of the acreage stated in the decree. The declaration numbered 4 should be struck, or modified to conform to the declaration

numbered 3 as modified. If there is no reason to suppose that in the future the water officers will refuse to recognize plaintiffs' declared rights, a continuance of the injunction is not necessary.

The case will be remanded with direction to modify the judgment in accordance with what is said above.

RINER, Ch. J., and BURGESS, District Judge, concur.