Justice Scalia,
dissenting.
Thanks to improved irrigation techniques, Wyoming’s farmers and cattlemen appear to consume more of the water they divert from the Yellowstone River and its tributaries today than they did 60 years ago — that is to say, less of the diverted water ultimately finds its way back into the Yellowstone. The Court interprets the Yellowstone River Compact (Compact), see Act of Oct. 30, 1951, 65 Stat. 663, to grant those Wyomans* the right to increase their consumption so long as they do not increase the volume of water they diverted beyond pre-1950 levels. Thus, it holds, Montana cannot complain that the increased consumption interferes with its residents’ pre-1950 appropriative water rights. I disagree because the Court’s analysis substitutes *390 its none-too-confident reading of the common law, see ante, at 377, and n. 5, for the Compact’s definition of “beneficial use.”
The doctrine of appropriation allocates perpetual water rights along a river, on a “first in time[,] . . . superior in right” basis, Wyoming v. Colorado, 259 U. S. 419, 459 (1922), to those who divert its flow and apply the water to a beneficial use. See Hinderlider v. La Plata River & Cherry Creek Ditch Co., 304 U. S. 92, 98 (1938). The “beneficial use” requirement does most of the legal work. It marks the types of uses that confer an appropriative right — irrigation being a paradigmatic example, see United States v. Willow River Power Co., 324 U. S. 499, 504, n. 2 (1945); and it “measure[s]” the extent of an appropriator’s claim, see Ide v. United States, 263 U. S. 497, 505 (1924); A. Tarlock, Law of Water Rights and Resources §§ 5:66, 5:68-5:69, pp. 5-130.3, 5-130.9 to 5-130.10 (2010). At common law, an appropriator claims the volume of water diverted and “reasonably required”- by his intended use. Id., §§ 5:65, 5:66, at 5-127, 5-130.2; see Quinn v. John Whitaker Ranch Co., 54 Wyo. 367, 377-378, 92 P. 2d 568, 570-571 (1939).
The Compact borrows the concept of appropriation to define the rights of pre-1950 water users along the Yellowstone River and its tributaries. Article V(A) promises that “[a]ppropriative rights to the beneficial uses of the water of the Yellowstone River System existing in each signatory State as of January 1,1950, shall continue to be enjoyed in accordance with the laws governing the acquisition and use of water under the doctrine of appropriation.” 65 Stat. 666. Article 11(H) elaborates that a “Beneficial Use” is one “by which the water supply of a drainage basin is depleted when usefully employed by the activities of man.” Id., at 665 (emphasis added).
Like the common law, this definition lays out the types of uses that qualify as beneficial and the volume of water an appropriator may claim through his beneficial use. But the Compact’s focus on whether a use depletes a river’s water *391 supply — not whether it diverts the river’s flow — significantly limits the volume of water to which Wyoming is entitled. For purposes of the Compact, Wyoming may lay claim only to its beneficial users’ net consumption of water, that is, the volume of water diverted from the river minus the volume that flows (or seeps) back into the river’s channel.
This interpretation, and only this interpretation, gives meaning to the definition’s use of the word “depleted.” I cannot write off as an accident the choice of this word rather than the word consistently used elsewhere in the Compact: “diverted.” See Sosa v. Alvarez-Machain, 542 U. S. 692, 711, n. 9 (2004). The Compact’s authors knew how to use “diverted” and “diversion” when they wanted to. Those two words appear repeatedly in other provisions of the Compact, see Arts. 11(G); V(B), (C); VII(A), (C), (D), 65 Stat. 665-668; and the Compact defines them in the sentence immediately preceding the definition of “beneficial use.” See Art. 11(G), id., at 665. But the Compact’s authors chose to define beneficial use in terms of depletion — the first and only time the Compact uses any derivative of the word “deplete.” It is in my view a clear indication that the Compact intends to break from the common law’s focus on diversion.
The Court reduces the Compact’s deliberate use of “depleted” to an inconsequential slip of the pen. According to today’s majority, Article 11(H) speaks only to the types of uses that confer appropriative rights. “Nothing in the language,” it says, “suggests that ‘beneficial use’ means a measure of the amount of water depleted.” Ante, at 386. This is incomprehensible. On the Court’s own interpretation “beneficial use” not only defines the types of uses that confer appropriative rights, but also determines the volume of water to which the rights attach — viz., only that volume put to one of the specified types of uses. The only question before us is whether “beneficial use” measures the volume diverted or the volume depleted — and the language of the Compact makes that clear.
*392 The Court provides no plausible explanation for use of the word “depleted” instead of “diverted.” Its best effort is the suggestion that the word was used to ensure that hydroelectric power generation and other disfavored, nondepletive uses do not confer appropriative rights. See ante, at 386-387. That is highly unlikely, for two reasons. First, relying on a subtle distinction between depletion and diversion would be one of the clumsiest ways imaginable to accomplish that simple goal, if it was not already accomplished by other provisions of the Compact. One would instead have expected the Compact simply to exclude the disfavored uses from the “usefu[l]... activities of man,” Art. 11(H), 65 Stat. 665, which confer appropriative rights. Cf. Mont. Code Ann. § 85-2-102(4) (2009) (listing types of beneficial uses). Second, and even more conclusively, hydroelectric generation, water wheels, and mill races — the allegedly disfavored uses Wyoming and the United States offer up to explain the word “depleted” — are already excluded from appropriative rights (and probably from any need for appropriative rights) by the Compact’s definition of diversion: “the taking or removing of water from the Yellowstone River or any tributary thereof when the water so taken or removed is not returned directly into the channel of the Yellowstone River or of the tributary from which it is taken.” Art. 11(G), 65 Stat. 665.. The modifying clause seems specifically designed to exclude hydroelectric dams, water wheels, and mill races, which, when they divert water from the Yellowstone or its tributaries, “retur[n it] directly into the channel . . . from which it is taken.”
The Court objects to my interpretation because the word “depleted” lacks the “clarity” necessary to “drastically redefine the term ‘beneficial use’ from its longstanding meaning,” ante, at 387. According to the Court, “[t]he amount of water put to ‘beneficial use’ has never been defined by net water consumption.” Ibid. Before making this statement, the Court has spent some nine pages, ante, at 377-385, conducting a *393 “sensitive . . . inquiry [that] counsels caution”; into a field (state water law) where the answer of this Court is not conclusive and hence not ipso facto correct (“it is not this Court’s role to guide”); resulting in the Court’s best guess concerning “an unclear area of appropriation doctrine”; answering a question which “‘[n]o western state court [not even a lower court] appears to have conclusively answered.’ ” Ante, at 377, and n. 5. The Court calls that hitherto unanswered question “the law of return flows,” ante, at 377, but it can more accurately be described as the question whether the volume of water to which an appropriator acquires rights is the entire volume diverted for a beneficial use, or rather only the volume depleted by the beneficial use. Which is to say that “beneficial use” has never had the “longstanding meaning” the Court posits. If it has in the past been assumed to refer to all water diverted from the stream rather than all water depleted from the stream, that is only because the issue of which of the two it means has never arisen. I find it quite extraordinary that the Court should expend such heroic efforts (imagine how many eases had to be read!) answering a state water-law question that no court of any Western State has ever answered — a question that would cross a Rabbi’s eyes — when the text in front of us provides the clear answer insofar as this Compact is concerned: “depleted.”
The Court suggests that if the Compact’s authors wanted to break from (what it considers) the common law, they should have defined beneficial use as the “volume by which the water supply ... is depleted.” Ante, at 387-388 (internal quotation marks omitted). That objection seems to me to have little force when the Court cannot explain what work “depleted” is supposed to do other than indicate precisely the same concept more concisely. And the Court’s helpful drafting tip proves that speaking with greater clarity is not so easy. Following the Court’s advice would make nonsense of Article V(B) of the Compact. That provision allocates a *394 fixed percentage “of the unused and unappropriated water” of various tributaries to each State for post-1950 “storage or direct diversions for beneficial use on new lands or for other purposes.” 65 Stat. 666. But if “beneficial use" in this last phrase means “the volume of water by which .. . the water supply is depleted,” the provision makes no sense. It would allocate a fixed percentage of unused and unappropriated water for “a volume of water by which the water supply is depleted.” It makes perfect sense, of course, if “beneficial use” means all uses that deplete the stream.
The Court also wonders why, “if Article V(A) were intended to guarantee Montana a set quantity of water,” it did not “d[o] so as plainly as other” interstate water compacts “that do just that.” Ante, at 388. This is a straw man. Montana does not demand a precise volume of water each year; nor does it insist that its pre-1950 water users always receive enough water to satisfy their pre-1950 needs. It merely asks that its pre-1950 water users occupy the same position relative to Wyoming’s pre-1950 users in 2011 as they did in 1950 — that whatever would have flowed back into the Yellowstone after Wyoming appropriators’ beneficial uses in 1950 if the river then had this year’s flow, will also flow back this year. See Tr. of Oral Arg. 13, 16, 24. In dry years, that may mean some Montanans will have to make do with less or go without.
Because I think the Court’s disposition disregards the text of the Compact, I respectfully dissent.

The dictionary-approved term is “Wyomingite,” which is also the name of a type of lava, see Webster's New International Dictionary 2961 (2d ed. 1954). I believe the people of Wyoming deserve better.