Gertrude A. LEWIS; Betty M. DesRosiers; Richard L. Lewis; Grace W. Lewis; Roland B. Lewis; Relta K. Cox; David M. Nelson and Constance Nelson, husband and wife; Rudolph Gunter; and Julian Land & Livestock Co., a Wyoming corporation, Appellants (Plaintiffs/Petitioners),

v.

STATE BOARD OF CONTROL, an agency of the State of Wyoming (George Christopulos, President; Paul Schwieger, Ex-Officio Secretary; Francis Carr, Adjudication Officer; Earl Michael, Superintendent Water Division No. I; Paul Kawulok, Superintendent Water Division No. II; Craig Cooper, Superintendent Water Division No. III; and John Teichert, Superintendent Water Division No. IV; in their official capacity); R.S. Peterson & Sons, Inc., a Wyoming corporation; Ben Weston; Marie Weston; Dale Weston; Robert A. Faddis; John H. Faddis; Hubert Faddis; Fred Allen Feller; Irene Feller; Utah Power & Light Company, a Utah corporation; John Sedey and Clara Sedey, husband and wife, Appellees (Defendants/Respondents).

No. 84–161.

Supreme Court of Wyoming.

May 17, 1985.

Timothy O. Beppler and Roy A. Jacobson, Jr. of Vehar, Lehman, Beppler and Jacobson, P.C., Evanston and Kemmerer, for appellants.

A.G. McClintock, Atty. Gen., and John D. Erdmann, Asst. Atty. Gen., Cheyenne, for appellee State Bd. of Control.

Harry L. Harris and Mark W. Harris, Evanston, for remaining appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

This is an appeal from a decision of the district court dismissing appellants' claims based on adverse possession and affirming the State Board of Control's order denying appellants' petition for abandonment of water rights.

We affirm.

Appellants state the issues as follows:
"I. WHETHER A WATER USER MAY ACQUIRE A JUDICIALLY DECLARED RIGHT TO WATER, ALREADY APPROPRIATE[D] BY ANOTHER, THROUGH APPLICATION OF THE DOCTRINE OF ADVERSE POSSESSION?

"II. WHETHER THE DOCTRINE OF EQUITABLE ESTOPPEL CAN BE APPLIED TO PRECLUDE THE STATE AND SENIOR WATER APPROPRIATORS FROM ENFORCING OR ASSERTING WATER APPROPRIATION PRIORITIES?

"III. WHETHER THE ORDER OF THE STATE BOARD OF CONTROL CONCERNING ABANDONMENT OF WATER RIGHTS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW?"

On March 13, 1981, appellants petitioned the State Board of Control for a declaration of abandonment of water rights pursuant to § 41–3–401, W.S.1977. Appellants, contestants below, include persons who hold water rights to several streams which are tributary to Twin Creek. Contestees below were the owners of the downstream Beckwith Quinn & Company appropriation (BQ appropriation) from Twin Creek, which ap-

propriation is the most senior in the Twin Creek drainage area. An administrative hearing was held, and the State Board of Control denied the petition for abandonment.

Thereafter, contestants (then plaintiffs) filed a petition in district court for judicial review of agency action pursuant to the Wyoming Administrative Procedure Act, § 16–3–114, W.S.1977 (October 1982 Pamphlet)[1] and Rule 12 of the Wyoming Rules of Appellate Procedure.[2] In addition, contestants joined with the petition a complaint seeking a determination of their ownership in the water rights by virtue of adverse possession. This "Complaint/Petition" prayed for several things, including: (1) an order setting aside the order of the State Board of Control, (2) a declaration that defendants' (contestees') appropriation rights "be declared abandoned and subordinated to Plaintiffs' respective appropriation rights on the Clear Creek, South Fork and North Hartley Creek," and (3) "[i]n the alternative, that the Court enter its judgment granting Plaintiffs a prescriptive water appropriation right over the BQ appropriation rights of record" on the Twin Creek drainage area.

Contestants claim that for lengthy and successive periods of time, ranging from 27 years, on South Fork, to 50 years, on Clear Creek, they have used the water from the subject tributaries to the detriment of the BQ appropriators' priorities. Further, contestants claim that their use has been open, visible, notorious and adverse to the BQ appropriators, and that the adverse use has been continuous, uninterrupted and exclusive for the statutory period of ten years.

Contestants admit that at various times during the above-mentioned time periods,

the BQ appropriators have sought regulation of the junior water rights by officials of the State. However, the State failed to regulate these tributaries so that the BQ appropriators could receive their priority. Contestants thus claim that the BQ appropriators failed to exhaust their administrative and legal remedies to enforce such regulation.

■ The trial court dismissed contestants' claim of adverse possession, based on failure to state a claim on which relief could be granted. Rule 12(b)(6), W.R.C.P. In reviewing a dismissal under Rule 12(b)(6), this court will only sustain such dismissal if the complaint shows on its face that the plaintiff is not entitled to relief. *Johnson v. Aetna Casualty & Surety Co. of Hartford*, Conn., Wyo., 608 P.2d 1299 (1980), appeal after remand 630 P.2d 514, cert. denied 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981), reh. denied 455 U.S. 1039, 102 S.Ct. 1743, 72 L.Ed.2d 157 (1982). Therefore, we treat as true all the allegations of contestants' complaint. *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733 (1979).

■ Even with this generous standard of review, we find that the trial court was correct in dismissing contestants' claim based on adverse possession for the simple reason that we here hold that water rights may not be acquired by adverse possession or prescription in this state.[3]

The question of whether or not rights to water may be acquired through adverse possession has never, until now, been answered in Wyoming. The question was considered in *Campbell v. Wyoming Development Co.*, 55 Wyo. 347, 100 P.2d 124,

---

1. Section 16–3–114 authorizes judicial review for "any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency" under the procedure there set forth.

2. Rule 12, W.R.A.P., designates the specific procedure for judicial review of administrative action as is directed by § 16–3–114.

3. The State Board of Control concedes that title to land may be acquired by adverse possession pursuant to § 1–3–103, W.S.1977; if water rights are appurtenant to such land, then the title to the water passes with the title to the land. We do not mean, by this opinion, to foreclose this possible exception to the general rule that water rights cannot be acquired by adverse possession. We leave this question open for another day.

reh. denied with opinion 55 Wyo. 347, 102 P.2d 745 (1940). There plaintiffs sought, based on a claim of prescription, to quiet title to certain water rights of the Little Laramie River, which had been used by plaintiffs for over 50 years. The plaintiffs had adjudicated water rights to appropriate from the Little Laramie River, which was a tributary to the Big Laramie River, on which the defendant had adjudicated water rights. This court held that the plaintiffs had failed to show that their use of the water was adverse. We went on to say "no claim of a prescriptive right can be set up by plaintiffs, at least up to the time of the adjudication of the waters of Little Laramie River in 1892." Id., 100 P.2d at 138. "The only possible question is as to prescription since that time, if a prescriptive title may be obtained at all in this state, which we refused to decide." Id., 102 P.2d at 748. We also noted some of the things that a plaintiff would have to show in order to prove adverse possession, such as an invasion, in a substantial manner, of the rights of the defendant and the extent of that invasion during a continuous prescriptive period, and that all of this must be done with the knowledge and acquiescence of the defendant and in an open and notorious manner. We then said:

" * * * Hence arises the question whether under our laws, a prescriptive right should be able to be acquired when its basis lies in the fact that public officials have failed to do their duty. It is readily seen that if it can be, a water commissioner, in office long enough, may easily enable another to acquire such title. * * * It may be necessary in the future to answer the points above suggested. We do not think that we are called on to do so now * * *." Id., 102 P.2d at 750.

Once again we find it unnecessary to determine whether or not the elements of adverse possession are present inasmuch as we hold it impossible to acquire water rights by adverse possession. We base this holding on the Wyoming Constitution and the Wyoming statutes. The relevant constitutional provisions are as follows:

Article 8, § 1, Wyoming Constitution: "The water of all natural streams, springs, lakes or other collections of still water, within the boundaries of the state, are hereby declared to be the property of the state."

Article 8, § 2, Wyoming Constitution: "There shall be constituted a board of control, to be composed of the state engineer and superintendents of the water divisions; which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state."

Article 8, § 3, Wyoming Constitution: "Priority of appropriation for beneficial uses shall give the better right. No appropriation shall be denied except when such denial is demanded by the public interests."

These provisions establish the doctrine of appropriation for beneficial use as the law in this state. The statutes go on to set up the procedures for appropriating water. Section 41-3-101, W.S.1977, Cum.Supp. 1984, defines the nature of water rights and beneficial use:

"A water right is a right to use the water of the state, when such use has been acquired by the beneficial application of water under the laws of the state relating thereto, and in conformity with the rules and regulations dependent thereon. Beneficial use shall be the basis, the measure and limit of the right to use water at all times, not exceeding the statutory limit * * *."

Section 41-4-501 et seq., W.S.1977, explain the procedure for obtaining a water right, i.e.:

"Any person, association or corporation hereafter intending to acquire the right to the beneficial use of the public water of the state of Wyoming shall, before

commencing \* \* \* make an application to the state engineer for a permit to make such appropriation. \* \* \* " Section 41–4–501, W.S.1977.

We have held that the only way to acquire a water right is through a permit granted by the State. *Wyoming Hereford Ranch v. Hammond Packing Co.*, 33 Wyo. 14, 236 P. 764 (1925). In *Laramie Rivers Co. v. Le Vasseur*, 65 Wyo. 414, 202 P.2d 680, 686 (1949), we said

"  \* \* \* that no water right may be initiated under our present laws except pursuant to a permit; that hence the requirement of such permit is mandatory. \* \* \* "

Contestants do not disagree with this, but argue that that holding does not apply to them because they are not *initiating* a water right from the State, but rather taking over a water right which was initiated through the required permit process. In other words, contestants claim they are not bound by the permit process because they are not appropriating water from the *State*, but rather stepping into the shoes of a legitimate appropriator from the State.

This argument is faulty. If adopted, it would cripple the permit procedure, negate the doctrine of prior appropriation, and make impossible the efficient administration of water. The purpose for the permit procedure is discussed at length in *Wyoming Hereford Ranch v. Hammond Packing Co.*, supra, 236 P. at 770:

"In determining the meaning of a written law, it is proper to consider the evils sought to be remedied. The laws of the territory had permitted the diversion of water without any state supervision of the works and without any adequate notice and record of the amount, purpose, and date of the appropriation. Defective and badly located diversion works often made the use of water wasteful. No right became definite until it was adjudicated in court, and adjudications were often long delayed and then made on inaccurate testimony and without any disinterested measurements of the ditches or of the lands irrigated. Until such an adjudication, no subsequent appropriation could be made with safety, for no one could tell the amount of unappropriated water in the stream. The evils attendant on such a system, and the importance of providing a different system that would give the state the unquestioned right of control, had become well recognized at the time the Constitution was framed. See 2 Annual Rep.Terr. Eng.Wyo. (1889) pp. 3, 12, 16, 37, 41, 58, 69, and 98. To correct these defects in the old system, it was provided by the Constitution not only that the waters of the state are the property of the state but also that those waters, and their *appropriation, distribution, and diversion,* shall be under the supervision of a state board of control. This supervision, it was hoped, would cure many of the evils of the old system, and we think that hope has been justified by the later events. The constitutional declaration that priority of appropriation for beneficial uses shall give the better right was not intended to prevent the Legislature from prescribing reasonable conditions that must be complied with before a lawful appropriation could be made. Their power in this respect is both recognized and limited by the further provision of the Constitution, carried into the statutes, that 'no appropriation shall be denied except when such denial is demanded by the public interests.' In interpreting this language, we must give consideration to the contemporaneous recognition not only of the importance of state supervision of the diversion of waters, but also of the fact that such supervision could not be effective, nor intelligently exercised, without accurate and complete information of proposed appropriations. The Legislature has decided that the public interests demand that such information shall be given to the state board by an application for a permit, and that until such an application is approved, no appropriation can be lawfully made. We believe these requirements are reasonable in so far at least as they are questioned in this case.

"As already stated, we believe the intent of the Legislature appears plainly from the statute. The statute must, of course, be construed in the light of the Constitution. The pertinent constitutional provisions do not require any different construction of the statute, nor do they render it invalid. This view accords with that of the members of the constitutional convention, the Legislature, the administrative officers of the state, and is agreeable to the opinions of this court in so far as they have been heretofore expressed without having the question for decision. We may say further that we believe the people of the state generally have cheerfully accepted the same view, and that water users have been satisfied to act accordingly for the past 35 years." (Emphasis added.)

These words are as valid today as when they were written. Accordingly, it is clear that prescriptive acquisition of water rights was not contemplated by the framers of the constitution, nor is it allowed by the statutes of this state. The district court correctly dismissed this claim.

### EQUITABLE ESTOPPEL

Contestants claim that appellees, both the BQ appropriators and the State Board of Control, should be equitably estopped from now attempting to regulate the three tributaries of Twin Creek because of their failure in the past to effectively regulate said tributaries. The testimony adduced before the State Board of Control included the following: The BQ appropriators testified that over the years, when Twin Creek failed to provide their 16.5 c.f.s. of water, they contacted a State official and requested the regulation of junior appropriators upstream. One junior appropriator, not a party to this action, testified that whenever her appropriation was regulated, she demanded that the water appropriations to which she was senior be regulated before her water was shut off. A water official testified that he had been requested by the BQ appropriators numerous times over the years to regulate the contestants. There was also testimony that the contestants,

when regulation *was* attempted, ignored it. One violation of such regulation by contestants resulted in criminal prosecution for illegally tampering with the control structure.

Contestants admit that the BQ appropriators requested regulation by water officials at various times, and admit that they were not abiding by such regulation, but contend that the BQ appropriators knew that the water officials were not effectively regulating the water and knew that contestants were ignoring the little regulation that was attempted. Contestants state that:

"There can be little doubt that both the State and the BQ appropriators voluntarily, and for a long period of time, decided to forego regulation of Appellants' use of water out-of-priority. The State apparently made a conscious decision not to regulate, and the BQ appropriators—although dissatisfied with the State's failure to regulate—apparently made a conscious decision not to pursue legal remedies available to them to rectify the situation."

One of the basic tenants of equity is that he who seeks equity must come into the court with clean hands. *Walker v. Board of County Commissioners, Albany County*, Wyo., 644 P.2d 772 (1982). Also, he who seeks equity must do equity.

"'* * * [N]o party, whatever may be his interests or legal rights, can have relief in a court of equity, unless his claim is founded on the basis of good faith and justice. * * *'" *Vogel v. Shaw*, 42 Wyo. 333, 349, 294 P. 687, 693 (1930), quoting from *Fay v. Valentine*, 12 Pick. (Mass.) 40, 22 Am.Dec. 397.

Equitable estoppel rests largely on the facts and circumstances of each individual case. *Vogel v. Shaw*, supra, 294 P. at 694. The contestants in this case do not make the grade. Noting that this holding is limited to the facts of this particular case, we hold that contestants are not entitled to equitable estoppel. We expressly withhold for future decision whether equitable estoppel can ever apply to effectively cir-

cumvent the permit requirements of water appropriation.[4] We cannot, in all equity, allow contestants to benefit from their continued and illegal violations of the attempted regulation of their water rights which are junior to the rights of the BQ appropriators.

## JURISDICTION

Appellee State Board of Control takes issue with the jurisdiction of the district court to hear any matter relating to water rights except on review from an order of the State Board of Control. In its brief, the State Board of Control states:

> "The Contestants' independent claims for relief in the District Court have no basis in law, and there exists no jurisdiction by the District Court or this Court [the Supreme Court] to entertain them."

The State Board of Control cites Rule 12.-09, W.R.A.P., Cum.Supp.1984,[5] as the extent of review of an administrative ruling and § 41–3–401(b) as giving the State Board of Control "exclusive original jurisdiction in water right abandonment proceedings." Inasmuch as we hold that contestants are not entitled to equitable estoppel or adverse possession, we need not consider this contention.

## ABANDONMENT

Contestants' original claim before the State Board of Control was for an abandonment or partial abandonment. However, this claim is also premised on an adverse possession theory. In its Findings of Fact, the State Board of Control stated:

> "5. THAT the Contestants' presentation was unusual for an abandonment proceeding in that it was not directed toward the facts of use or non-use of the challenged appropriation as such. There

was no testimony presented concerning acreage not irrigated, inoperable diversion works, etc. Rather, the Contestants' theory was based upon the concept of acquisition of rights by prescription. * * * "

The Findings of Fact continue by saying that the "uncontroverted and unrebutted" testimony of the BQ appropriators' witnesses show that there has been no abandonment of that appropriation; that Beckwith Quinn & Company has, for the five years last past, diverted and used for irrigation all the water available at its point of diversion; and that the water diverted has not always been 16.5 c.f.s. because the flow in Twin Creek has not always been of sufficient quantity at the point of diversion to completely satisfy the full right. There was also note made of the fact that requested regulation of the Twin Creek watershed was not completely successful "because some of the Contestants * * * refused to abide by the regulation of the Water Commissioner and Division Superintendent."

The State Board of Control concluded in part:

> "3. THAT the Beckwith Quinn & Company appropriation which was contested in this action has not been abandoned by its owners. The available water was diverted and used during the five years last past. * * *

> "4. THAT the only basis for the State Board of Control to declare an abandonment of water rights is the fact of non-use for five consecutive years when water was available as is stated in W.S. 41–3–401. No other reason is given in the statute."

---

**4.** We doubt, however, whether State officials can be estopped from regulating water rights in accordance with established priorities. We have repeatedly held that it is the duty of the officers charged with superintendence of the diversion of water to make distribution in accordance with priorities as determined or adjudicated. *Quinn v. John Whitaker Ranch Co.*, 54 Wyo. 367, 92 P.2d 568 (1939).

**5.** Rule 12.09, W.R.A.P., Cum.Supp.1984, provides in pertinent part:

> "The review shall be conducted by the court without a jury and shall be confined to the record as supplemented pursuant to Rule 12.-08, W.R.A.P., and to the issues raised before the agency. The court's review shall be limited to a determination of the matters specified in § 16–3–114(c)."

The district court held that the State Board of Control "did not act in excess of its statutory jurisdiction, authority or limitations," and affirmed its decision. In reviewing the district court on this issue, we are bound to review the whole record to determine if there is substantial evidence to support the findings of the State Board of Control. Section 16–3–114(c), W.S.1977 (October 1982 Pamphlet); *Mountain Fuel Supply Company v. Public Service Commission of Wyoming*, Wyo., 662 P.2d 878 (1983); *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, Wyo., 611 P.2d 427 (1980).

We note that a review such as this is unlike that which we conduct of a district court decision where it is sitting as a court of general jurisdiction. Here the district court is sitting in a role similar to that of an intermediate court of appeals. Therefore, on subsequent appeal to this court, we afford no special deference to the decision of the district court, but rather review the matter independently, using the same materials and the same standards as used by that court. *Matter of North Laramie Land Company*, Wyo., 605 P.2d 367 (1980).

Section 41–3–401(a) sets out the requirements for a declaration of abandonment. It is, by its terms, very clear and concise. It reads, in part:

"(a) Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto. * * * "

We have held that when the facts fit the mandate, subsection (a) amounts to a forfeiture by statute. The statute allows for no leeway; the only way to avoid an abandonment is by applying water to beneficial use. *Wheatland Irrigation District v. Laramie Rivers Company*, Wyo., 659 P.2d 561 (1983).[6] We have also held that before a forfeiture, or abandonment, becomes operative, there must be a formal declaration thereof. *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 54 Wyo. 320, 92 P.2d 572 (1939).

In reviewing the whole record, we find that contestants failed to prove an abandonment. The petition for abandonment was filed on March 13, 1981. Contestants make much ado about the use of water on the three tributaries for the past 50, 27 and 38 consecutive years, depending on the tributary. We are, however, only concerned with the five years immediately preceding the filing of the petition. The parties all concede that in 1977 there was a total absence of water in the subject tributaries, and so that year is properly excluded from computation in the five-year period. Section 41–3–401(b), W.S.1977.

Notwithstanding 1977, the evidence is clear that the BQ appropriators utilized all the water that was available to them. In times when less than 16.5 c.f.s. were available, they consistently diverted the full amount that was available, and contacted a water official for administrative regulation. It is the duty of the officers charged with regulating water to make distribution in accordance with established priorities. *Quinn v. John Whitaker Ranch Co.*, 54 Wyo. 367, 92 P.2d 568 (1939). The BQ appropriators had the right to rely on the water officials to do their jobs. If said officials were not effective in their regulation, that alone will not work to effect a water abandonment, considering the facts herein that (1) the BQ appropriators consistently called for regulation when the flow of water in Twin Creek fell below 16.5 c.f.s.; (2) such regulation was attempt-

---

6. We do note that:

"* * * The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period." Section 41–3–401(b), W.S.1977.

ed; and (3) such regulation failed primarily due to the refusal of contestants to abide by the lawful orders of the water officials.

We find that there was more than substantial evidence in the record to uphold the decisions of the State Board of Control and the district court that an abandonment was not proven.

Our holding makes it unnecessary to consider the issue raised by appellee State Board of Control relative to the standing of contestants to petition for an abandonment.

Affirmed.