**John R. BILLINGS, d/b/a Open Creek Outfitters, Petitioner (Petitioner),**

**v.**

**WYOMING STATE BOARD OF OUTFITTERS AND PROFESSIONAL GUIDES, Respondent (Respondent).**

No. 91–227.

Supreme Court of Wyoming.

Sept. 3, 1992.

---

**4.** Aurilla P. Condict was not served with summons. She was "deemed not competent for service."

Andrew L. Breffeilh, Jackson, for petitioner.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, and Ron Arnold, Sr. Asst. Attys. Gen., for respondent.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

MACY, Chief Justice.

Petitioner John R. Billings, d/b/a Open Creek Outfitters, appeals from Respondent Wyoming State Board of Outfitters and Professional Guides' decision to revoke Petitioner's 1990 outfitter's license and to deny his 1991 license application.

We reverse.

---

* Chief Justice at time of oral argument.

Petitioner raises the following arguments on appeal:

I. The Board's conclusion of law that Petitioner violated § 23–2–416(a)(iv), and § 23–3–303(a), W.S.1977 with spoiled game meat is unsupported by substantial evidence.

II. The Board's conclusion of law that Petitioner violated § 23–2–416(a)(iv), and § 23–3–303(a), W.S.1977 with spoiled game meat is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

III. The Board violated the Petitioner's constitutional rights against self-incrimination, against double jeopardy, to due process of law, and to equal protection of the laws.

IV. The Board denied the Petitioner his constitutional and statutory right to counsel.

V. The Board systematically violated the Wyoming Administrative Procedure Act.

VI. The Board systematically violated its own rules.

John R. Billings had operated Open Creek Outfitters for the previous ten years in the Open Creek drainage area of the Thorofare River in the Shoshone National Forest. The operation consisted of two camps staffed with various guides, wranglers, and cooks who provided the hunters with meals, horses, and sleeping accommodations. The hunters reached the camps by completing a rigorous thirty-two-mile pack trip into the wilderness. Once they were in camp, the hunters were taken on guided hunts for various big game animals in the Open Creek drainage area.

Following the 1990 hunting season, the Board received several complaints from hunters dissatisfied with the quality and/or lack of services which Petitioner provided on hunts scheduled for the weeks of September 8 and October 14, 1990. Most significant among the complaints was the fact that the meat from several of the elk shot during the September hunt spoiled before Petitioner delivered it to a meat processor in Cody. Similarly, hunters on the October

trip complained that Petitioner needlessly allowed the meat from a deer to spoil. A hearing examiner heard the complaints in a two-day hearing, after which he recommended that Petitioner's 1991 license application be rejected for needlessly allowing game animals to go to waste. The Board voted to adopt the hearing examiner's recommendation and his proposed findings of fact and conclusions of law. Rather than issuing an order, the Board notified Petitioner by letter that, on the basis of the hearing examiner's recommendation, it was revoking his 1990 license and denying his 1991 license application. Petitioner petitioned for a review in the district court, and the district court certified the matter to this Court for resolution pursuant to W.R.A.P. 12.09.

In his first issue, Petitioner contends that the Board's conclusions of law were not supported with substantial evidence as was required by Wyo.Stat. § 16–3–114(c)(ii)(E) (1990). Although Petitioner phrases the argument as being a lack of substantial evidence, the text of his argument addresses what, in our view, is the true threshold question: Whether the Board made sufficiently detailed findings of fact to support its action as was required by Wyo.Stat. § 16–3–110 (1990).

■ Section 16–3–110 sets forth an agency's duty to support its action with sufficient factual findings:

A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. *Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.*

(Emphasis added.) In prior cases, we interpreted this statute as imposing the duty upon the agency to "make findings of basic

facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based." *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission,* 446 P.2d 550, 555 (Wyo.1968). *See also Mekss v. Wyoming Girls' School,* 813 P.2d 185, 201 (Wyo.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). A lack of findings of basic fact on all material issues precludes any rational basis for judicial review because this Court cannot determine the basis upon which each ultimate fact or conclusion was reached. In short, we must know the why. *Geraud v. Schrader,* 531 P.2d 872, 879 (Wyo.), *cert. denied,* 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975). When the agency's findings do not adequately explain the justification for its position, we must remand the matter to the agency for the necessary supplemental findings. *Mekss,* 813 P.2d at 202.

In this case, the Board based its decision to revoke Petitioner's license and to deny his license application upon the following conclusion of law:

22. [Petitioner] violated W.S. 23–2–416(a)(iv) [1] and W.S. 23–3–303(a) by allowing meat to needlessly go to waste. [Petitioner] did not make any special arrangements to pack out the meat when the weather was unseasonably hot during the September 8, 1990 trip. The unseasonable weather does not excuse an experienced outfitter to continually allow hunting while not taking precautions against the unseasonable heat. Furthermore, [Petitioner] did not pack out the meat shot by a hunter on the October 14, 1990 trip.

Wyo.Stat. § 23–2–416(a)(iv) (1991) authorizes the Board to suspend or revoke an outfitter's license for violation of a significant wildlife law. Here, the Board concluded that Petitioner violated Wyo.Stat. § 23–3–303(a) (1991), which provides:

. . . .

(iv) Violation of any significant federal or state law or related regulations pertaining to wildlife, game and fish[.]

---

1. Wyo.Stat. § 23–2–416(a)(iv) (1991) provides:
   (a) The board may require payment of damages as provided by subsection (b) of this section or suspend or revoke a license issued under this act for any of the following causes:

(a) No person shall take and leave, abandon or allow any game bird, game fish, or game animal except trophy game animal, or edible portion, to intentionally or needlessly go to waste.

The language of § 23–3–303(a) requires the Board to find first that Petitioner took a game animal and second that he needlessly or intentionally allowed it to go to waste. In an attempt to satisfy the statute's requirements, the Board made the following findings:

10. Most of the hunters shot elk on the trip [referring to the September 8th trip]. Five out of six elk spoiled before delivery of the elk meat to the Cody processor.

. . . .

13. During the October 14, 1990 trip, one of the hunters shot and killed a deer. The deer meat was never found and packed out to the Cody processor plant.

These findings are insufficient to support the Board's conclusion that Petitioner violated § 23–3–303(a) for two reasons. First, the Board failed to find that Petitioner took the animals which he allegedly allowed to go to waste. Second, the findings are not adequate to allow this Court to engage in a meaningful review of the Board's conclusion that Petitioner needlessly wasted wild game meat.

■ We will first address the Board's failure to adequately support its conclusion that Petitioner needlessly allowed the meat from game animals to go to waste. The Board's findings that the meat from five elk spoiled before it was delivered to the meat processor and that one deer was never found and packed out are not sufficient. To adequately support its conclusion, the Board must explain how Petitioner's action or inaction resulted in needlessly wasting wild meat. At a minimum, the Board should have made findings regarding the relevant time period; i.e., establishing when the kill was made, when the animal was brought into camp, and when Petitioner actually packed out the meat. Without knowing what Petitioner did or failed to do, we do not have an adequate basis upon

which we can review the Board's conclusion.

In addition to its two cursory findings of fact, the Board states in conclusion of law number 22 that Petitioner did not make special arrangements to pack out the meat during the unseasonably hot September hunt and that he allowed hunting while not taking precautions against the heat. Although written as part of a conclusion of law, these statements are probably more accurately labeled as findings of fact. As findings of fact, these statements at least attempt to identify what Petitioner failed to do; however, they are still not sufficient to support the conclusion that Petitioner needlessly allowed the meat to spoil because they do not identify what special arrangements or precautions Petitioner failed to undertake.

■ As we previously mentioned, to violate § 23–3–303(a) one must not only needlessly allow wild game meat to go to waste, but one must also take the game animal in question. Our interpretation of the statute requires the Board to find that Petitioner took the deer and elk which spoiled. The Board disagrees with this position, arguing that § 23–3–303(a) is applicable to Petitioner even if he did not take the animals. In support of its view that to violate the statute one does not need to take the animal, the Board points out that § 23–3–303(a) does not say "no hunter" may waste wild game meat but rather that it provides "no person" may waste wild meat. "Person" is broadly defined in Wyo.Stat. § 23–1–102(a)(viii) (1991) as "an individual, partnership, corporation, company, any other type of association, and any agent or officer of any partnership, corporation, company, or other type of association." Thus, according to the Board, this broad definition makes the statute applicable to Petitioner.

We agree with the Board that the statute applies to a broader class than just hunters. The problem with the Board's argument is that it ignores the words "take and" in the statute. Section 23–3–303(a) is clear that: "No person shall *take*[2] *and*

2. According to Wyo.Stat. § 23–1–102(a)(vii) (1991), "take" means "hunt, pursue, catch, cap-

leave, abandon or allow any ... game animal ... to intentionally or needlessly go to waste." (Emphasis added.) The statute uses the conjunctive "and," meaning that, in order to violate the statute, a "person," as defined in § 23–1–102(a)(viii), must both take the animal and needlessly allow it to go to waste. The only way to read the statute as not requiring the same "person" to take the animal and also to allow its meat to go to waste is to omit the words "take and." Omitting "take and" would be contrary to our rule of statutory interpretation that every word in a statute must be given meaning and that statutes must be read so that no word is superfluous or inoperative. *Keene v. State*, 812 P.2d 147, 150 (Wyo.1991). Therefore, we hold that, to violate § 23–3–303(a), the same "person" who took the animal must also allow it to go to waste.

We recognize that, at least in an outfitter/hunter context, § 23–3–303(a)'s taking requirement may impede the statute's ability to prevent Wyoming's valuable game animals from needlessly going to waste. This is because, in most outfitter/hunter relationships, once the hunter shoots the animal, the outfitter is responsible for packing out the animal. A hunter who is completely dependent upon the outfitter to remove the animal cannot be guilty of needlessly allowing the meat to go to waste so long as he takes appropriate precautions within his control to preserve the meat. Conversely, the outfitter will also not be liable because he did not actually take the animal. This means incidents may occur when the outfitter would be responsible for allowing meat to go to waste because he did not pack out the animals quickly enough, yet the outfitter would escape liability under the statute. Despite this potential shortcoming, we cannot ignore the statute's use of the word "take." It is for the legislature, not this Court, to decide whether an outfitter who does not take the animal should be liable for wasting wild game meat.

Generally, the Board's failure to find that Petitioner took the animals and its inadequate explanation of how Petitioner needlessly wasted wild game meat would require our remanding this case for additional findings. *Mekss*, 813 P.2d at 202. However, it would be futile for us to remand this matter because it is clear in this case that the hunters who employed Petitioner took the animals which spoiled, not Petitioner.

Having disposed of the case as discussed above, we do not need to consider the remaining issues raised by Petitioner.

Reversed.

CARDINE, J., filed a specially concurring opinion.

CARDINE, Justice, specially concurring.

I cannot agree with the court's holding that Wyoming outfitters who provide guide and outfitting services are not subject to the penalties of W.S. 23–3–303(a), which makes unlawful allowing the waste of a game animal. Nevertheless, I concur in the reversal of the Board's decision.

Wyoming statute 23–3–303(a) pertaining to allowing animals to go to waste provides as follows:

> No person shall take and leave, abandon or allow any game bird, game fish, or game animal except trophy game animal, or edible portion, to intentionally or needlessly go to waste.

The majority of this court reverses the decision of the Wyoming State Board of Outfitters and Professional Guides by holding that only the hunter who shoots big game can violate W.S. 23–3–303(a) because the hunter who shoots and kills the game is the "person" (and only person) who "takes" and leaves game "intentionally" or "needlessly" to "go to waste."

Wyoming statute 23–1–102(a)(vii) and (viii) provide, under general definitions, that

> (vii) "Take" means hunt, pursue, catch, capture, shoot, fish, seine, trap, kill, or

ture, shoot, fish, seine, trap, kill, or possess, or attempt to hunt, pursue, catch, capture, shoot,

fish, seine, trap, kill, or possess."

possess, or attempt to hunt, pursue, catch, capture, shoot, fish, seine, trap, kill, or possess;

(viii) "Person" means an individual, partnership, corporation, company, any *other type of association,* and any agent or officer of any partnership, corporation, company, or other type of association[.] [emphasis added]

The court in its majority opinion concludes that the term "other type of association" found in the above statute, because of the rule of *ejusdem generis,* must be an individual, partnership, corporation, or company. I disagree. *Ejusdem generis* as defined in *Black's Law Dictionary* (6th ed. 1990) is as follows:

Of the same kind, class, or nature. In the construction of laws, wills, and other instruments, the *"ejusdem generis* rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. *U.S. v. LaBrecque,* D.C. N.J., 419 F.Supp. 430, 432. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.

The rule requires that general words following words of a particular or specific meaning include persons or things of the same general kind or class as those specifically mentioned. The words specifically mentioned in defining "person" in W.S. 23–1–102(a)(viii) are business entities. Thus, it is patently clear that the words "other type of association" were intended by the legislature to include any other business-type association or arrangement under which game animals are taken.

We must invoke the rule that this court looks only to the intent of the legislature when enforcing or construing statutes. *Allied–Signal, Inc. v. State Bd. of Equalization,* 813 P.2d 214, 219 (Wyo.1991); *Bil-lis v. State,* 800 P.2d 401 (Wyo.1990); *Rocky Mountain Oil and Gas Ass'n v. State Bd. of Equalization,* 749 P.2d 221 (Wyo.1987). Legislative intent must be ascertained initially and primarily from the words used in the statute. *Allied–Signal,* 813 P.2d at 219; *Phillips v. Duro–Last Roofing, Inc.,* 806 P.2d 834, 837 (Wyo. 1991). The statutory language itself provides valuable insight into legislative intent. *Pisano v. Shillinger,* 835 P.2d 1136 (Wyo.1992) (No. 91–138, published July 27, 1992). We normally accord some weight to the construction of a statute by an administrative agency unless the agency's construction is clearly erroneous. *State ex. rel. Worker's Comp. Div. v. Mahoney,* 798 P.2d 836, 838 (Wyo.1990). In interpreting a statute, every word, clause and sentence must be considered so that no part will be rendered inoperative or superfluous. *Id.; Story v. State,* 755 P.2d 228, 231 (Wyo. 1988). Each element must be given meaning. If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. Any additional construction can be resorted to only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate. *Mahoney,* 798 P.2d at 219; *Blue Cross Ass'n v. Harris,* 664 F.2d 806, 809 (10th Cir.1981).

I would hold that the language used in W.S. 23–3–303(a) and W.S. 23–1–102(a)(viii) is clear and unambiguous and that the obvious legislative intent was that "other type of association" would be any other monetary business arrangement or relationship between persons and, when applied to W.S. 23–3–303(a), includes as a person the business association of an outfitter with a client for a fee to provide the agreed contractual service for a big game hunt.

That the legislature intended that outfitters and guides who occupy a business relationship with a hunter would be subject to statutes prohibiting the intentional or needless waste of big game animals cannot be seriously disputed. The hunter who signs on with an outfitter for a big game hunt does so because he lacks equipment, supplies, horses, pack animals, camp site,

knowledge of forest, wilderness and hunting areas, vehicles and other equipment, and because it would be unlawful for him as a nonresident to undertake such a hunt. The outfitter furnishes all that is needed for the hunt, including horses and pack animals. It is only the outfitter who will pack out the game taken. The hunter cannot, will not, and is not expected to pack out the game to prevent waste where he has entered into the business-type relationship as here for the hunt.

In this case, the hunter paid a fee of $3,000 for the hunt; and the outfitter, according to his written brochure and agreement, represented and agreed as follows:

"Each camp is equipped with a large cook and dining tent where wholesome, hot meals are prepared by our cook. The menu is carefully planned to provide nutritious and satisfying food. The hunters' tents have bunks, foam pads, heating stoves and lanterns. There is also a guide's tent, grain and gear tent, corrals and hiking trails." * * *

* * * * * *

* * * "The outfit is geared to handle up to four hunters per trip with two hunters per guide. We prefer small parties in order to provide more personal attention and quality hunting. However, if you have a party of five or six hunters and like to hunt together, we can easily accommodate you. Our horses and mules are kept in good condition and are ridden throughout the summer, ensuring you of a well cared for, gentle, and mountain-wise animal. All gear, tents, and equipment are well maintained and replaced when necessary.

"After pulling out of the Thorofare country in early November, we hunt deer in the North Fork and South Fork Drainages of the Shoshone River. These areas are noted for producing trophy mule deer. We hunt the area daily and return to Cody each night."

* * * * * *

"[We provide] Transportation to and from Cody airport, if necessary; transportation to and from trailhead; *riding and pack animals;* one guide per two hunters; meals; cook; *field dressing of game;* antler, *cape* and hide preparation as you specify; *delivery of meat to Cody processor* if you wish." [emphasis added]

The outfitter who enters into a business relationship with his client hunter to take game animals has entered into the business-type association defined in the statute and, therefore, is a "person" who under W.S. 23–3–303(a) violates Wyoming law when he takes and leaves a game animal to needlessly go to waste. As such, he is subject to perform the requirements and to the penalties imposed by W.S. 23–3–303(a).

Nevertheless, I concur in the reversal of the Board's decision. It is not supported by substantial evidence and therefore is arbitrary, capricious or an abuse of discretion under W.S. 16–3–114(c)(ii)(A). The extensive record of this hearing tells us that an unusual set of occurrences and circumstances led to the unfortunate spoilage of this game meat. This hunt had hardly begun when three of the outfitter's employees unexpectedly quit his employment. The group packed back 32 miles to its base camps to begin the hunt. The weather was unseasonably warm, being in the 80 to 90 degree temperatures. There was compliance with the statute requiring that big game be packed to the camp within 48 hours. The attempt thereafter to pack the game to Cody, Wyoming encountered an unexpected heavy snow storm resulting in a day and a half being consumed in that effort. There was evidence that the game would have spoiled in any event because of the circumstances encountered. Contrary evidence was totally lacking. The Board could reach the conclusion and make the finding that it did—that the outfitter was in violation—only by its conclusion that he should have made "special" provision for packing out game animals. Failure to take special precautions that would have been necessary in these extreme unexpected circumstances was practically impossible and can hardly rise to the level of violation of W.S. 23–3–303(a). The outfitter was acquitted of the criminal charge of violating this statute. I recognize that an alterna-

tive disposition in this case might be a remand to the Board to make additional findings. I would not oppose that resolution of the case. However, I am prepared at this time to concur in reversal of the Board's decision and do concur.