Sam J. SCOTT and Mona R. Scott,
Appellants (Petitioners),

v.

John McTIERNAN and Donna Dubrow;
and Board of Control of the State of
Wyoming, Appellees (Respondents).

No. 98–113.

Supreme Court of Wyoming.

March 22, 1999.

Rehearing Denied April 27, 1999.

Tom C. Toner and John G. Fenn of Yonkee & Toner, Sheridan, Wyoming, Representing Appellants.

Kim D. Cannon and Anthony Wendtland of Davis & Cannon, Sheridan, Wyoming, Representing Appellees McTiernan and Dubrow.

William U. Hill, Attorney General; Thomas J. Davidson, Deputy Attorney General;

and S. Jane Caton, Senior Assistant Attorney General, Representing Appellee Board of Control.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN & TAYLOR,* JJ.

MACY, Justice.

Appellants Sam Scott and Mona Scott (the Scotts) petitioned for a review of the order in which Appellee Board of Control of the State of Wyoming (the board) concluded that the Scotts had abandoned a portion of their water rights. The district court certified the case to the Wyoming Supreme Court.

We affirm in part, reverse in part, and remand.

## ISSUES

The Scotts present the following issues on appeal:

1. Can a senior appropriator's water rights be abandoned on the petition of a junior appropriator who deliberately blocked and destroyed ditches to prevent the senior appropriator from receiving irrigation water during the five year[ ] period immediately preceding the filing of the abandonment petition and who during that five year period assured the senior appropriator that he would restore the ditches?

2. Was the Board's conclusion that only 14.1 acres of the Shallcross property were irrigated in the five years immediately preceding the filing of the abandonment petition supported by substantial evidence and sufficiently detailed findings of fact?

3. Was the Board's conclusion that only 7.6 acres of Tracts 3 and 4 between the Northeast 22 Draw and Smith Creek were irrigated supported by substantial evidence and sufficiently detailed findings of fact?

4. Did the Board correctly conclude that the No. 3 right did not apply to the 10.1 acres south of Smith Creek in Tracts 3 and 4?

## FACTS

The Scotts owned property in Sheridan County, and Appellee John McTiernan and Appellee Donna Dubrow (John's wife) (collectively referred to as McTiernan), owned a ranch which neighbored the Scotts' property. At one time, McTiernan's property and the Scotts' property were owned in common. McTiernan and the Scotts held water rights in Smith Creek to irrigate their respective properties.

The Scotts owned part of the John Ross Appropriation, which was a territorial water right with the priority date of May 1882 and was the number three priority on Smith Creek.[1] Two parcels of land owned by the Scotts were irrigated by the John Ross Appropriation: (1) Tracts 3 and 4; and (2) the Shallcross property. The adjudicated point of diversion for the John Ross Appropriation was the Ross No. 1 Ditch. A prior common owner of McTiernan's property and the Scotts' property developed a complex system of diversions and ditches to utilize his water rights. As a result, the John Ross Appropriation was not actually diverted through the Ross No. 1 Ditch but was, instead, diverted through several other points of diversion. The Scotts' irrigation water for Tracts 3 and 4 was, therefore, conveyed in ditches across McTiernan's property.

In 1991, McTiernan started deliberately preventing water from flowing down the ditches to Tracts 3 and 4. McTiernan also filled in ditches which had previously conveyed water to the Scotts' property in order to facilitate the movement of his side-roll sprinklers. McTiernan's ranch manager and another McTiernan employee assured the Scotts that the ditches would be replaced.

On August 29, 1996, McTiernan filed a petition with the board for a declaration of abandonment of the John Ross Appropriation. McTiernan claimed that the water from the John Ross Appropriation had not been beneficially used in the five years immediately preceding the abandonment petition. The Scotts reciprocated by filing a petition

---

* Retired November 2, 1998

1. Jeanne Moore also owned part of the John Ross Appropriation. After McTiernan filed the abandonment petition, Ethan Dubrow acquired the Moore property.

for a declaration of abandonment of several of McTiernan's water rights. The board consolidated the abandonment petitions for a hearing.

The superintendent of Water Division Number Two held a contested case hearing in the summer of 1997 on the consolidated petitions. On January 5, 1998, the board entered an order which granted McTiernan's petition in part and denied it in part and which granted the Scotts' petition in part and denied it in part. With respect to McTiernan's petition, the board ruled that part of the John Ross Appropriation had been abandoned. The board reduced the John Ross Appropriation from 1.78 cubic feet per second for the irrigation of 125 acres to 0.46 cubic feet per second for the irrigation of 32 acres. Specifically, the board determined that, during the preceding five years, the Scotts had irrigated only 17.9 acres of Tracts 3 and 4 and 14.1 acres of the Shallcross property.

The Scotts petitioned the district court for a review of the board's decision. McTiernan did not, however, appeal from the board's abandonment decision regarding his water rights. The district court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

When we review cases which have been certified to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of the first instance. *Union Telephone Company, Inc. v. Wyoming Public Service Commission*, 907 P.2d 340, 341–42 (Wyo.1995). Wyo. Stat. Ann. § 16–3–114(c) (Michie 1997) governs judicial review of administrative decisions. W.R.A.P. 12.09(a); *Everheart v. S & L Industrial*, 957 P.2d 847, 851 (Wyo.1998).

In reviewing an agency's findings of fact, we determine whether substantial evidence supports the findings. *DeWall v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 960 P.2d 502, 503 (Wyo.1998). "Substantial evidence is relevant evidence which a reasonable mind might

accept in support of the agency's conclusions." *Id.* We affirm an agency's conclusions of law when they are in accordance with law. *Corman v. State ex rel. Wyoming Workers' Compensation Division*, 909 P.2d 966, 970 (Wyo.1996). When an agency has not invoked and properly applied the correct rule of law, we correct the agency's errors. *Weaver v. Cost Cutters*, 953 P.2d 851, 855 (Wyo.1998); *Gneiting v. State ex rel. Wyoming Workers' Compensation Division*, 897 P.2d 1306, 1308 (Wyo.1995).

An administrative agency is charged with the duty of supporting its action with adequate findings of fact. Wyo. Stat. Ann. § 16–3–110 (Michie 1997). Section 16–3–110 states in pertinent part:

A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

In discharging its duty under § 16–3–110, the agency must "make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based." *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, 446 P.2d 550, 555 (Wyo.1968). *See also Billings v. Wyoming State Board of Outfitters and Professional Guides*, 837 P.2d 84, 86 (Wyo.1992). This Court needs to know "why" an agency decided the way it did. *Billings*, 837 P.2d at 86; *Geraud v. Schrader*, 531 P.2d 872, 879 (Wyo.), *cert. denied sub nom. Wind River Indian Education Association, Inc. v. Ward*, 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975). When an agency does not make adequate findings of basic fact, we do not have a rational basis upon which to review its ultimate findings and conclusions. *Billings*, 837 P.2d at 86; *see also Schulthess v. Carollo*, 832 P.2d 552, 558–59 (Wyo.1992). In cases where the findings do not adequately explain the rationale for the agency's decision, we remand the matter

to the agency so that it can make additional findings. *Billings,* 837 P.2d at 86.

## DISCUSSION

### A.  Lands North of Smith Creek

The Scotts contend that the board should not have determined that they abandoned the John Ross Appropriation as it applied to the land north of Smith Creek in Tracts 3 and 4. They claim that they did not voluntarily abandon their water right but that they were, instead, forced to discontinue using the water because McTiernan blocked the ditches. The appellees counter by arguing that a literal reading of the abandonment statute supports the board's decision. We agree with the Scotts.

■ Wyo. Stat. Ann. § 41–3–401 (Michie 1997) governs the abandonment of water rights. That statute provides in pertinent part:

(a) Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto.

Section 41–3–401(a). "[W]e have long adhered to the rule that adjudicated water rights will not be set aside unless justified by clear and convincing evidence." *Wheatland Irrigation District v. Pioneer Canal Co.,* 464 P.2d 533, 537 (Wyo.1970).

In finding of fact number 24, the board stated:

24.  THAT the evidence was persuasive that Scott was prohibited from receiving water by the upstream actions of McTiernan on McTiernan's own property blocking and closing in ditches which could have supplied Scott water and which did supply water to Scott's land when the properties were all in one ownership. The testimony is clear, however, that Scott failed to exercise his remedies to this aggression. Although it is questionable whether or not water administration authorities could have forced reopening of the ditches in response to a call, Scott did not ask. Nor did he seek court assistance in providing him trespass authority to enter McTiernan's lands to open his ditch; nor did he seek administrative permission to change his point of diversion (except on the Shallcross parcel) to facilitate capture of his Priority No. 3 water right at locations accessible to him.

■ This Court has stated numerous times that an abandonment of a water right must be voluntary. *See, e.g., Scherck v. Nichols,* 55 Wyo. 4, 95 P.2d 74, 80 (1939); *Horse Creek Conservation Dist. v. Lincoln Land Co.,* 54 Wyo. 320, 92 P.2d 572, 577 (1939); *Ramsay v. Gottsche,* 51 Wyo. 516, 69 P.2d 535, 541 (1937). A water right cannot be declared to be abandoned when the non-use of the water was "caused by facts not under the appropriator's control." *Scherck,* 95 P.2d at 80. *See also Yentzer v. Hemenway,* 440 P.2d 7, 13 (Wyo.1968). Applying this principle, we have ruled that an abandonment of a water right did not occur when the appropriator's failure to use his water was due to: (1) a disastrous flood which prevented the appropriator from using his ditches and dams, *Ramsay,* 69 P.2d at 541; (2) the inability to obtain water, *Horse Creek Conservation Dist.,* 92 P.2d at 577; and (3) the shortage of water, *Yentzer,* 440 P.2d at 13; *Scherck,* 95 P.2d at 80. Similarly, a United States circuit court concluded that, under Wyoming law, an appropriator did not abandon his water right when he was prevented from obtaining water because of the unlawful diversions of water by upstream users. *Morris v. Bean,* 146 F. 423, 434 (C.C.D.Mont.1906).

The board argues that the cases which hold that an abandonment must be voluntary are no longer apposite. It claims that those cases were decided prior to the legislature's inclusion of the language in § 41–3–401(a) which states that abandonment occurs when an appropriator "fails, *either intentionally or unintentionally,* to use" his water. (Emphasis added.) The board maintains, therefore, that an abandonment no longer has to be

voluntary because § 41–3–401(a) states that an abandonment can occur even if the appropriator's nonuse is not intentional. In other words, the board equates "intentional" with "voluntary."

The legislature merely acknowledged the existing case law when it included the "intentionally or unintentionally" language in its 1973 version of the abandonment statute.[2] Wyo. Stat. § 41–47.1 (Supp.1973). We ruled in a 1960 case that an appropriator may forfeit his water right by nonuse regardless of whether or not he intended to abandon that right. *Ward v. Yoder,* 355 P.2d 371, 375–77 (Wyo.1960); *see also Van Tassel Real Estate & Live Stock Co. v. City of Cheyenne,* 49 Wyo. 333, 54 P.2d 906, 910, *cert. denied,* 299 U.S. 574, 57 S.Ct. 38, 81 L.Ed. 423 (1936).

■ The cases which state that an abandonment must be voluntary can be reconciled with the law which states that intent is not required. An appropriator can abandon his water right by nonuse regardless of whether or not his failure to use the water was intentional. Section 41–3–401(a); *Ward,* 355 P.2d at 375–77. An abandonment cannot occur, however, if the appropriator's nonuse was not voluntary because circumstances beyond his control prevented him from using his water. *Yentzer,* 440 P.2d at 13; *Scherck,* 95 P.2d at 80. An associate professor of law at the University of Wyoming College of Law recognized this distinction in a 1989 article in the Land and Water Law Review. Mark Squillace, *A Critical Look at Wyoming Water Law,* 24 Land & Water L.Rev. No. 2 307, 336 (1989). He stated that, although intent to abandon does not need to be shown, failure to use the water must be voluntary in order for an abandonment to occur. *Id.*

■ The board acknowledged McTiernan's aggression against the Scotts but concluded that the Scotts should have taken affirmative action to counter the aggression. Similarly, both the board and McTiernan ar-

gue that the Scotts' claim that their nonuse was involuntary is irrelevant because the Scotts did not diligently attempt to use the John Ross Appropriation. In advancing that argument, the appellees ignore the uncontradicted evidence that McTiernan's employees assured the Scotts that the ditches would be restored and, thereby, led the Scotts to believe that it was not necessary for them to take affirmative action to protect their water rights. The Scotts were surprised when McTiernan filed an abandonment petition against them.

This Court has considered the relative equities and conduct of the parties to abandonment actions in previous water rights cases. *See, e.g., Lewis v. State Board of Control,* 699 P.2d 822, 829–30 (Wyo.1985); *Sturgeon v. Brooks,* 73 Wyo. 436, 281 P.2d 675, 684 (1955). In *Lewis,* we held that an abandonment did not occur where the junior appropriators illegally refused to abide by the water officials' regulatory orders and, thereby, prevented the senior appropriator from receiving and using his water. 699 P.2d at 829–30.

The Scotts' failure to use their water right was the result of McTiernan's deliberate actions to prevent them from receiving their water. Accordingly, the Scotts did not voluntarily abandon their water right. The board's decision that the Scotts had abandoned the John Ross Appropriation as it applied to the land in Tracts 3 and 4 north of Smith Creek is, therefore, reversed. Our determination on this issue is also dispositive of the Scotts' third issue because both issues concern the same lands.

**B. Shallcross Property**

■ The Scotts maintain that the board's conclusion that only 14.1 acres of the Shallcross property were irrigated during the five years immediately preceding McTiernan's filing of the abandonment petition was not supported by substantial evidence or by suffi-

2. Prior to the 1973 creation of Wyo. Stat. Ann. § 41–47.1 (Supp.1973), the relevant abandonment statute stated in part:
    [I]n case the owner or owners of any such ditch, canal or reservoir shall fail to use the water therefrom for irrigation or other benefi-

cial purposes during any five successive years, they shall be considered as having abandoned the same, and shall forfeit all water rights, easements and privileges, appurtenant thereto....
    Wyo. Stat. § 41–47 (1957).

ciently detailed findings of fact. McTiernan argues that sufficient evidence and adequate findings of facts supported the board's determination. We agree with the Scotts that the board's findings of fact concerning the Shallcross property were inadequate.

The Scotts claimed that they irrigated twenty-five acres of the Shallcross property in 1996. McTiernan conceded that the Scotts had irrigated three acres of the Shallcross property. The board addressed the Shallcross property in finding of fact number 23. That finding stated in pertinent part:

> SW¼NE¼ of Section 24, Township 57 North, Range 87 West (Shallcross property):
>
> Bruce Barton, a McTiernan witness, testified at the public hearing that he observed irrigation in the SW¼NE¼ of Section 24, Township 57 North, Range 87 West, shown as 3.0 acres in green on Exhibit No. 30 submitted as evidence at the public hearing. Robert Mullinax, John Dahlke and Roy Powers testified at the public hearing that they observed the "big gun" operating on the Shallcross parcel in different locations which total an additional 11.1 acres of irrigation, shown on Exhibits X–3 and 44 submitted as evidence at the public hearing.

The board accordingly concluded that only 14.1 acres of the Shallcross property had been irrigated, and it ruled that the Scotts abandoned the remainder of the water right.

The board relied on the testimony of Robert Mullinax, John Dahlke, and Roy Powers, together with Exhibits X–3 and 44, to justify its determination that the Scotts had irrigated only 11.1 acres in addition to the three acres conceded by McTiernan. Exhibits X–3 and 44 are maps which depict the Shallcross property.

Mullinax was an irrigation equipment contractor who visited the Scotts' property around August 15, 1996, to give them an estimate for installing an irrigation pipeline. He testified that he saw a big gun sprinkler operating on the Shallcross property north of the Smith Creek subdivision access road. He drew a circle on Exhibit X–3 to show the area where he saw the sprinkler operating. Mullinax testified that he also saw irrigation pipe laid out on the west side of the big gun sprinkler. He stated that a big gun sprinkler waters a circular area with a 130–foot radius. Mullinax hypothesized that the big gun sprinkler could, therefore, water approximately three-quarters of an acre on each set.[3]

Dahlke, a hydrographer commissioner for the board, also testified at the hearing. In July 1996, he observed a big gun sprinkler operating on the Shallcross property both north and south of the subdivision road. Dahlke drew six circles on Exhibit 44 to show where he saw the sprinkler operating. He went on to state that he observed "a minimum of seven or eight" acres of the Shallcross property being irrigated in 1996.

Powers owned land which neighbored the Scotts' land, and he occasionally traveled on the subdivision road through the Shallcross property. He testified that, in 1996, he saw the Scotts operating the big gun sprinkler on the Shallcross property south of the subdivision road. Powers marked Exhibit 44 to show the location of the big gun sprinkler.

The appellees argue that the board's conclusion that the Scotts irrigated 11.1 acres can be extrapolated from Mullinax's, Dahlke's, and Powers' testimony. The board claims that it accepted Sam Scott's testimony that he made nine sets with the big gun sprinkler during the 1996 irrigation season. It then used Mullinax's testimony that the big gun sprinkler watered a circular area with a radius of 130 feet to calculate a total acreage of 10.98 acres,[4] or, as the board states, "approximately 11.1 acres."

3. According to our calculations, a sprinkler which watered a circular area with a 130–foot radius would actually water 1.219 acres rather than three-quarters of an acre per set. We reached this conclusion as follows: Area of a circle = pi (3.1416) multiplied by the radius squared. In this case, we have: 3.1416 times 130 feet squared = 3.1416 times 16,900 = 53,- 093 divided by the number of square feet in an acre (43,560) = 1.219 acres per set.

4. The irrigated area may be calculated as follows: Area of a circle = pi (3.1416) multiplied by the radius squared. In this case, we have: 3.1416 times 130 feet squared = 3.1416 times 16,900 = 53,093 divided by the number of

The board's argument is obviously an attempt to justify its decision in hindsight. In its findings of fact, the board did not state that it relied on Sam Scott's testimony to support its conclusion that 11.1 acres had been irrigated. Furthermore, if it had truly used this rationale to reach its conclusion, it would have determined that Scott had irrigated 10.98 or, if it had rounded the number up, 11.0 acres. The board's calculation simply does not support its conclusion that the Scotts irrigated an additional 11.1 acres of the Shallcross property.

McTiernan takes a different approach to justify the board's conclusion. McTiernan argues that the 11.1–acre conclusion can be derived by using Mullinax's statement that each big gun set covers approximately three-quarters of an acre and taking that figure times twelve to fourteen sets. McTiernan does not explain the source of its twelve- to fourteen-set figure, and no such figure is readily discernable from Mullinax's, Dahlke's, or Powers' testimony. We cannot, therefore, accept McTiernan's rationale to justify the board's finding.

■ The appellees have not convinced us that the board's factual findings in this case are sufficient. Furthermore, "a litigant's brief or oral argument is no substitute for a proper agency decision." *Schulthess*, 832 P.2d at 559. There may be a sufficient factual basis for the board's determination that the Scotts irrigated only 11.1 acres of the Shallcross property in addition to the three acres conceded by McTiernan; however, that factual basis was not included in the formal findings of fact. We, therefore, remand this case with directions that the board make additional findings of fact concerning the Shallcross property. *Billings*, 837 P.2d at 86.

C. Land South of Smith Creek

The Scotts claim that the board incorrectly determined that a 10.1–acre parcel in Tracts 3 and 4, which was located south of Smith Creek, was "doubl[y] appropriated" and was not part of the John Ross Appropriation.

The appellees argue that the board's determination that the 10.1–acre parcel was not part of the John Ross Appropriation was correct. We agree with the appellees.

The board's finding of fact number 23 stated in relevant part:

Scott contended in its Reply Brief that 15.5 acres located in this quarter quarter south of Smith Creek are part of the John Ross Appropriation. This parcel of land has been historically and is presently being irrigated through the Morrill Ditch under Permit No. 17531, as evidenced by the recent adjudication for Scott by the State Board of Control of 10.1 acres in the SW¼ NW¼ of Section 24, Township 57 North, Range 87 West under Permit No. 17531, and, therefore, is not part of the John Ross Appropriation.

The lands irrigated under the John Ross Appropriation were described in a blanket land description as follows:

*Township 57 North, Range 87 West*

Section 24:  NW¼NW¼

S½NW¼

SW¼NE¼

This description includes 160 acres, but the John Ross Appropriation allowed for irrigation of only 125 acres. The actual 125 acres were not specified in the adjudication documents. The 10.1 acres which the board found were not part of the John Ross Appropriation were in the SW¼NW¼ of Section 24. They were, therefore, included within the original description of the lands under the John Ross Appropriation. Nevertheless, because the blanket description of the John Ross Appropriation included an additional thirty-five acres, there was obviously some land within the description that actually was not irrigated under the John Ross Appropriation.

In 1929, a previous common owner of the Scotts' and McTiernan's properties received a permit to irrigate 98.1 acres with water from the Morrill Ditch. The description of the land which was to be irrigated under this

square feet in an acre (43,560) = 1.219 acres per set times 9 sets = 10.97 acres. We assume that the difference between our calculation and the

board's calculation is due to differences in rounding.

appropriation included the 10.1 acres in the SW¼NW¼ of Section 24. Accordingly, the 10.1 acres were described in both the John Ross Appropriation and the Morrill Appropriation.[5]

The board has authority to define or quantify water rights when the original adjudication documents are not completely clear on the scope of the water rights. *See Zezas Ranch, Inc. v. Board of Control,* 714 P.2d 759, 762–64 (Wyo.1986). It was, therefore, within the board's power to determine exactly what lands fell under the John Ross Appropriation.

The Scotts maintain that, in order for there to be 125 acres of irrigated lands within the 160 acres described in the John Ross Appropriation, the 10.1 acres south of Smith Creek had to be included in that right. The board determined, however, that this land had historically been irrigated by the Morrill Ditch, and the Scotts do not direct us to evidence in the record which contradicts that determination. The lay of the land reveals that the 10.1 acres could not have been irrigated out of the Ross No. 1 ditch because the ditch was located on the north side of Smith Creek and the 10.1 acres at issue here are located on the south side of the creek.

The board's determination that the 10.1 acres in the SW¼NW¼ of Section 24 were not part of the John Ross Appropriation is, therefore, supported by substantial evidence.

## CONCLUSION

The board incorrectly determined that the Scotts had abandoned the John Ross Appropriation as it applied to the lands north of Smith Creek in Tracts 3 and 4. That part of the board's decision is, therefore, reversed. The board's findings of fact concerning the Shallcross property are inadequate, and, consequently, we remand the decision to the board for additional findings of fact. We affirm the board's conclusion that the John Ross Appropriation did not apply to the 10.1 acres south of Smith Creek because substantial evidence supports the board's determination.

Affirmed in part, reversed in part, and remanded.

---

5. The Scotts argue that the 10.1 acres were not "doubl[y] appropriated" until 1996 when McTiernan filed a proof of the Morrill Appropriation. They claim that McTiernan did not have the right to file a proof of appropriation for their property. The propriety of the Morrill Appropriation is not properly before us at this time; the Scotts cannot collaterally attack the Morrill Appropriation in this case. Our decision in this case is, therefore, limited to the issues properly before this Court.